## PRESIDIO COUNTY, TEXAS, *v.* THE NOEL-YOUNG BOND & STOCK COMPANY.

### CERTIORARI TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 41. Argued December 4, 1908.—Decided January 18, 1909.

Where the officers having statutory authority to issue bonds have also the statutory authority to determine whether conditions precedent have been performed, certify by recitals therein that the bonds are issued in virtue of the statute, such recitals import compliance with

the statute upon which a *bona fide* purchaser can rely, and the obligor cannot against such a purchaser assert the contrary. *Evansville* v. *Dennett,* 161 U. S. 434.

In the absence of evidence to the contrary the presumption is that a third party producing a genuine negotiable instrument is a *bona fide* purchaser for value.

The doctrine of *lis pendens* has no application to commercial securities. *Orleans* v. *Platt,* 99 U. S. 676, 682.

In respect to the doctrines of commercial law and general jurisprudence, while courts of the United States, in questions balanced with doubt, will, for the sake of harmony, lean towards an agreement with the state courts, as a general rule they will exercise their independent judgment uncontrolled by decisions based on local statutes and usage; and so in this instance as the state court proceeded in part on grounds inconsistent with the decisions of this court in such cases, its decision should not be followed. *Ball, Hutchings & Co.* v. *Presidio County,* 88 Texas, 60, not followed.

Although a coupon is for interest to become due on the bond the promises to pay are as distinct as though expressed in different instruments, and, as the bond and the coupons are capable of separate ownership, a suit on the bonds and a suit on the coupons are based on different causes of action.

A *bona fide* purchaser for value before maturity of bonds is not precluded or affected by an adverse judgment in a suit on the coupons of those bonds to which suit he is not a party and of which he had no notice.

000 Fed. Rep. 000, affirmed.

THE facts, which involve the validity of bonds issued by the petitioner, are stated in the opinion.

*Mr. T. J. Beall* for petitioner:

The judgment of the District Court of Presidio County, rendered in March, 1893, and affirmed by the Supreme Court of Texas, in which the bonds in this case were held void, was a bar to plaintiff's action, and the court should have so instructed the jury. *Lewis* v. *Brown Township,* 109 U. S. 162, 168; *Ball, Hutchings & Co.* v. *Presidio County,* 88 Texas, 60.

A judgment is conclusive, not only upon those who are actual parties to the litigation, but also upon all persons who are in

privity with them, in law or estate, and a person is bound by a judgment as a privy to one of the parties, when he has succeeded to some right, title or interest of that party in the subject-matter of the litigation.   2 Black on Judgments, § 549; *Calderwood* v. *Brooks,* 28 California, 151; *Thompson* v. *Clarke,* 4 Hun, 164.

The bonds sued on were issued without lawful authority, not being supported or authorized by any order of the Commissioners' Court of Presidio County, Texas.   88 Tex. Rep. 60; *Caruthers* v. *The State,* 67 Texas, 182; *Francis* v. *Howard County,* 50 Fed. Rep. 62.

The bonds were issued and delivered for the illegal purpose of furnishing a courthouse already constructed.   They were issued without any lawful authority, the power of the county to issue bonds to erect a courthouse and jail having been exhausted, as appears from the order of the Commissioners' Court recited on the face of the bonds, and the contracts mentioned in said order of the court and the registry of said bonds affected with notice the purchasers of the bonds in this suit, that said bonds were issued without authority of law.   *Caruthers* v. *The State,* 67 Texas, 132; *Nolan County* v. *The State,* 83 Texas, 183; *Francis* v. *Howard County,* 50 Fed. Rep. 62; *Francis* v. *Howard County,* 54 Fed. Rep. 487; *Davies County* v. *Dickinson,* 117 U. S. 657; *City of Brenham* v. *Bank,* 144 U. S. 173; *Nesbitt* v. *Independent District,* 144 U. S. 610; *Dickson County* v. *Field,* 111 U. S. 83; *Knox County* v. *Aspinwall,* 21 How. 539; *Ogden* v. *Davis County,* 102 U. S. 634; *Sutliff* v. *Board,* 147 U. S. 230; *Lake County* v. *Graham,* 130 U. S. 675; *Buchanan* v. *City of Litchfield,* 102 U. S. 278; *Clabourne County* v. *Brooks,* 111 U. S. 400; *Lewis* v. *City of Shreveport,* 180 U. S. 283; Dill. Mun. Corp., § 546.

The order of December 4, 1886, did not authorize the issuing of the bonds, and the undisputed evidence shows that blank lithographic courthouse and jail bonds were filled out and delivered to the contractor, for the unlawful purpose of furnishing the courthouse, for which purpose there is no authority of

law, under the constitution and laws of Texas, to issue bonds. Revised Statutes, Texas, art. 1527; *Holly* v. *Hopkins,* 74 Texas, 147; *Brown* v. *Rease,* 57 Texas, 318; *Barnett* v. *City of Dennison,* 145 U. S. 141; *Anthony* v. *Jasper County,* 101 U. S. 693; *School District* v. *Stone,* 106 U. S. 183; *Harchman* v. *Bates County,* 92 U. S. 169; *Bates County* v. *Winters,* 97 U. S. 85; *Colar* v. *City of Cleburne,* 131 U. S. 162; *Township of Oakland* v. *Skinner,* 94 U. S. 248; *Martin* v. *Nesbitt,* 86 Tennessee, 383; *Lewis* v. *Barber County,* 12 Kansas, 186; *Well* v. *Supervisors,* 102 U. S. 625.

The recitals of the laws, under which the bonds purport to be issued, are not the recital of any facts, but only conclusions of law. *Davis County* v. *Dickens,* 117 U. S. 657; *Francis* v. *Howard County,* 54 Fed. Rep. 487.

*Mr. Millard Patterson,* for respondent, submitted:

The plea of former judgment relied upon by plaintiff in error being simply as to the alleged fact that interest coupons had been held void upon the ground that the coupons (and bonds) had been issued for an unlawful purpose, to wit: to buy furniture, this plea as to this collateral fact was not established by the judgment of the Supreme Court of Texas, which did not decide that point, but simply decided that the interest coupons were void because they had no order of the Commissioners' Court to support them. *City of Aurora* v. *West,* 7 Wall. 82–107; *Russell* v. *Place,* 94 U. S. 606; *Lyon* v. *P. & G. Mfg. Co.,* 125 U. S. 698, 702; Stephens on Pleading, § 353; *Field's Estate,* 2 Rawle (Pa.), 357; *Greeley* v. *Smith,* Fed. Cas. 5,749; *Godard* v. *Benson,* 15 Abbotts' Practice, 191; *Sims* v. *Frankfort,* 79 Indiana, 446; *Crandell* v. *Gallup,* 12 Connecticut, 373; *Texas Banking Co.* v. *Hutchins,* 53 Texas, 61.

The judgment of the Supreme Court of Texas on certain interest coupons maturing prior to 1893 could under any circumstances only be a bar in this action on the bonds maturing in 1901 as to the point actually litigated and determined.

The cause of action in the suit of Ball, Hutchings & Co. being certain coupons which matured prior to 1893, and this suit

being upon the bonds which matured in 1901, the causes of action are different.

The judgment of the Supreme Court of Texas being simply upon certain coupons which had then matured cannot be binding on defendant in error, as this suit was brought, not upon any of those coupons, but upon the six bonds themselves more than ten years afterward, and defendant in error was not a party to that case, and the subject-matter of this suit was different from the subject-matter in the former case. *Nesbitt* v. *Ind. District of Riverside*, 144 U. S. 610, 621; *Cromwell* v. *Sac County*, 94 U. S. 351, 371; *Wilmington & W. Ry. Co.* v. *Alsbrook*, 146 U. S. 279, 302; *Keokuk & W. R. R. Co.* v. *Scotland Co.*, 152 U. S. 314, 315; *Ball, Hutchings & Co.* v. *Presidio Co.*, 88 Texas, 65.

The Commissioners' Court of Presidio County having power to issue the bonds; and it being shown that they were issued under an order of that court, and recited upon their face that they had been issued for the lawful purpose of building a courthouse, and full value having been paid for them by the original purchasers without any notice to the contrary, the only issue raised by the pleadings was whether or not they were void because in fact issued for the unlawful purpose of furnishing the courthouse; and the trial court, and the United States Circuit Court of Appeals, did not err in determining that the purchaser of the bonds had a right to rely upon the truth of the recitals.

Even if the recital in the bonds as to the date of the order under which they were issued was false, whether intentional or inadvertent, would not bind or affect a purchaser with notice of the fact that the bonds were issued for an unlawful purpose. *Pickens Township* v. *Post*, 99 Fed. Rep. 650, and cases there cited; *Chaffee County Coms.* v. *Potter*, 142 U. S. 355, 366; *Nolan County* v. *The State*, 83 Texas, 182–201; *Waite* v. *Santa Cruz*, 184 U. S. 302, 329; *Evansville* v. *Dennett*, 161 U. S. 434, 446; *Stanley County Commissioners* v. *W. N. Coler & Co.*, 190 U. S. 442, 444; *Venice* v. *Murdock*, 92 U. S. 494, 502; *Pine Grove Township* v. *Talcott*, 19 Wall. 666, 679; *Marshall County* v.

*Schenck,* 5 Wall. 772, 785; *Scotland Co.* v. *Hill,* 132 U. S. 107, 117; *Orleans* v. *Platt,* 99 U. S. 676; *Board of Commissioners* v. *National Life Ins. Co.,* 90 Fed. Rep. 231; *Village of Kent* v. *Dana,* 100 Fed. Rep. 60.

MR. JUSTICE HARLAN delivered the opinion of the court.

By an act of the legislature of Texas approved February 11th, 1881, the County Commissioners' Court of every county that had no courthouse was authorized and empowered to issue county bonds, with interest coupons attached, in such amount *as might be necessary* to erect a suitable building for a *courthouse* —such bonds to run not exceeding fifteen years, redeemable at the pleasure of the county, and bearing interest at a rate not exceeding eight per cent per annum. The act provided that the bonds should be signed by the County Judge, countersigned by the County Clerk and registered by the County Treasurer before being delivered. It also provided that the county should not issue a larger number of bonds than a tax of one-fourth of one per cent annually would liquidate in ten years, and that the bonds should be sold only at par value. General Laws, Texas, 1881, p. 5.

This act was amended in 1884, at a called session of the eighteenth legislature of Texas, so as to authorize the Commissioners' Court to issue county bonds (running not exceeding fifteen years) with interest coupons attached in such amount *as might be necessary* to erect a suitable *courthouse* building or *jail,* or *both.* General Laws, Texas, 1884, p. 28.

By another act passed March 27th, 1885, the power given by the act of 1884 to issue bonds for courthouse and jail purposes, or both in such amount as might be necessary, was recognized, and in addition county bonds theretofore issued for jail purposes under the act of 1881, as amended by the act of 1884, were validated. General Laws, Texas, 1885, p. 56.

The present action was brought July 26th, 1904, by the Noel-Young Bond & Stock Company, a Missouri corporation, a

holder, owner and bearer, to recover the amount of certain bonds—numbered 90, 91, 92, 94, 95 and 96, respectively— with interest coupons attached.

Each of the bonds sued on is in the name of the county, is for $1,000 and payable to bearer fifteen years after date, at 8 per cent per annum interest, on the tenth of April, at the State Treasury. It recites that it was "issued by virtue of an act of the Legislature of the State of Texas, entitled 'An act to authorize the County Commissioners' Court of the several counties of the State to issue bonds for the erection of a court-house and to levy a tax to pay for the same,' approved February 11, 1881, and by virtue of the provisions of chapter 17, laws of called session of the Eighteenth Legislature, which said chapter has since been validated by the act of March 27, 1885, authorizing the County Commissioners' Court of the several counties of the State to issue bonds for the erection of a county jail, and by order of the County Commissioners' Court of said County of Presidio, on the 9th day of February, 1886, and is redeemable before maturity at the pleasure of the county."

To each bond was affixed the seal of the County Commissioners' Court and was signed by the County Judge, countersigned by the Clerk of the County Court and by the County Treasurer, the latter certifying that it had been registered.

At the trial the court instructed the jury that the suit on the coupons was barred by the Texas statute of limitations, but it directed a verdict for the amount of the bonds with interest from December 6, 1900. That judgment was affirmed in the Circuit Court of Appeals, but without any opinion.

The county insists that although the bonds purport to have been issued by order of the County Commissioners' Court in virtue of certain legislative enactments referred to on the face of the bonds, and which authorizes that court to issue bonds for the erection of a courthouse or jail, or both, and although each bond is attested by the seal of the Commissioners' Court and the signatures of the officers who alone could attest and sign bonds issued for courthouse and jail purposes, the court

exceeded its powers in issuing the present bonds in that by its order of February 9th, 1886 bonds to the extent of only $86,000 were authorized—$60,000 for a courthouse and $26,000 for a jail; whereas, that amount of bonds for such purposes had in fact been issued before the bonds in suit. This contention means that the bonds in suit are to be deemed void if they were in fact in excess of the amount authorized by the order of February 9th, 1886. But that view cannot be maintained consistently with a long line of decisions.

Whether the Commissioners' Court, which had statutory authority to issue such bonds as were necessary for courthouse and jail purposes, had previously made the requisite order therefor was a matter peculiarly within the knowledge of its officers. They knew whether they had or had not directed bonds to be issued for such purposes. They knew, or ought to have known, whether the bonds, ordered to be issued, were in excess of the amount authorized by the legislature. They had authority to determine whether the precedent conditions had been fully performed. When, therefore, the county, acting by the Commissioners' Court, did issue bonds, attested by the seal of the court and the signatures of its officers, and reciting that they were issued under the order of the court, *in virtue* of the statute named, and were registered—such recitals fairly importing a compliance, in all substantial respects, with the statute giving authority to issue bonds—a *bona fide* purchaser was entitled to accept the recitals as stating the truth, and the county cannot, as against such purchaser, allege the contrary. It will not be heard to say that the bonds were in excess of the amount authorized, or that they were not issued for the purposes contemplated by the statutes referred to. These principles have become firmly established, as will be seen by an examination of the adjudged cases, some of which are cited in the margin.[1]

---

[1] *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Buchanan* v. *Litchfield*, 102 U. S. 278; *School District* v. *Stone*, 106 U. S. 183; *Commissioners* v. *Bolles*, 94 U. S. 104; *Anderson County Commissioners* v. *Beal*, 113 U. S.

The. county, however,· insists that an examination · of the order of the Commissioners' Court of February 9th, 1886, referred to in the bonds, would have informed any purchaser (1) that that court on that day ordered · only $86,000 in bonds to be issued—$60,000 for a courthouse and $26,000 for a jail; (2) that the particular bonds now. in suit, dated December 6th, 1886, and numbered 91 to 96 inclusive, were not covered by that order and therefore were in excess of .the amount so ordered for courthouse .and jail buildings.   Assuming for·the moment, but only for the moment, that. the purchaser·was bound to ascertain what the order of February 9th, 1886 contained, we observe ·that the statutes recited in the bonds did not name a specific amount beyond which the Commissioners' Court could not go in issuing bonds for courthouse and jail purposes.   They were authorized to issue for those purposes such an amount in bonds as was necessary up to the point that no more be issued than could be liquidated in ten years by a tax of one-fourth ·of ·one per cent for any one year.   It was for the Commissioners' Court in the first instance to determine what amount of bonds on that basis was required.   We observe, also, as did the Civil Court of Appeals of Texas in a case to be presently referred to (27 S. W. Rep. 702, 720), that the order of February 9th, 1886 did not require that the bonds issued for courthouse and jail purposes should be numbered consecutively from 1 to 86; that the bonds in suit bore numbers above 86 was immaterial in face of the recital in them that they were issued by order of the Commissioners' Court and in virtue of the statutes conferring the power to issue bonds for courthouse and jail purposes; and that that order gave no information that the bonds

227, 238–239; *Chaffee County* v. *Potter,* 142 U. S. 355, 364; *Gunnison County Commissioners* v. *Rollins,* 173 U. S. 255, 270; *Mercer County* v. *Hacket,* 1 Wall. 83; *Cairo* v. *Zane,* 149 U. S. 122; *Town of Venice* v. *Murdock,* 92 U. S. 494; *Marcy* v. *Town of Oswego,* 92 U. S. 637; *Wilson* v. *Salamanca,* 99 U. S. 499; *Sherman County* v. *Simons,* 109 U. S. 735, 737; *Hackett* v. *Ottawa,* 99 U. S. 86, 95; *Ottawa* v. *National Bank,* 105 U. S. 342, and authorities cited in each of the above cases.

here in suit were in excess of the $86,000 in bonds directed by that order to be issued.

Apart from this view, it is pertinent to inquire whether the purchaser was bound to examine the order of February 9th, 1886, and, at his peril, to know what that order contained? Was he not entitled without special or further inquiry to accept as true what the recitals in the bonds plainly imported, namely, that the bonds were issued for courthouse or jail purposes by order of the County Commissioners' Court, in conformity with specified acts of the legislature? Was he not entitled to act on the belief that the bonds issued under date of December 6th, 1886, were within the limit authorized by the legislature?

These questions find an answer in *Evansville* v. *Dennett*, 161 U. S. 434, 441, 445, 446. That was an action involving the validity of two series of bonds, issued by the city of Evansville, Indiana, for subscription to certain railroads. Each bond of the two series contained recitals to the effect that the bonds were issued in pursuance of certain legislative enactments, and by virtue of certain resolutions and ordinances passed by the city council. What was the effect of these recitals? This court said: "It is true that the city charter provided that 'no stock shall be subscribed or taken by the common council in such company, unless it be on the petition of two-thirds of the residents of said city, who are freeholders of the city, distinctly setting forth the company in which stock is to be taken, and the number and amount of shares to be subscribed.' But these were only conditions which the statute required to be performed or met before the power given was exercised. That there was legislative authority to subscribe to the stock of these companies cannot be questioned, although the statute declared that the power should not be exercised except under the circumstances stated in the statute. Was a *bona fide* purchaser of bonds issued in payment of a subscription of stock— the power to subscribe being clearly given—bound to know that the conditions precedent to the exercise of the power were

not performed? If the bonds had not contained any recitals importing a performance of such conditions before the power to subscribe was exercised, then it would have been open to the city to show, even as against a *bona fide* purchaser, that the bonds were issued in disregard of the statute, and, therefore, did not impose any legal obligation upon it. *Buchanan* v. *Litchfield*, 102 U. S. 278; *School District* v. *Stone*, 106 U. S. 183, 187. But the bonds issued on account of subscription to the stock of the Evansville, Henderson and Nashville Railroad Company recite that the subscription was 'made in pursuance of an act of the legislature and ordinances of the city council passed in pursuance thereof.' This imports not only compliance with the act of the legislature, but that the ordinances of the city council were in conformity with the statute. It is as if the city had declared, in terms, that all had been done that was required to be done in order that the power given might be exercised. . . . As therefore the recitals in the bonds import compliance with the city's charter, purchasers for value having no notice of the non-performance of the conditions precedent, were not bound to go behind the statute conferring the power to subscribe, and to ascertain, by an examination of the ordinances and records of the city council, whether those conditions had, in fact, been performed. With such recitals before them they had the right to assume that the circumstances existed which authorized the city to exercise the authority given by the legislature. . . . The city having authority, under some circumstances, to put these bonds upon the market, and having issued them under the corporate seal of the city, and under the attestation of its highest officer, certifying that they were issued in payment of a subscription of stock made in pursuance of the city's charter, the principles of justice demand that the bonds, in the hands of *bona fide* holders for value, should be met according to their terms, unless some clear, well-settled rule of law stands in the way. No such obstacle exists."

In the same case the court expressed its approval of the de-

cision in *Van Hostrup* v. *Madison City,* 1 Wall. 291, 296—a suit on municipal bonds—in which Mr. Justice Nelson, speaking for the court said: "Another objection taken is, that the proviso requiring a petition of two-thirds of the citizens, who were freeholders of the city, was not complied with. As we have seen, the bonds signed by the mayor and clerk of the city recite on the face of them that they were issued by virtue of an ordinance of the common council of the city, passed September 2, 1852. This concludes the city as to any irregularities that may have existed in carrying into execution the power granted to subscribe the stock and issue the bonds, as has been repeatedly held by this court."

In *Waite* v. *Santa Cruz,* 184 U. S. 302, 320, which was also a suit on municipal bonds and involved the effect of recitals importing compliance with law, the court referred to and followed *Evansville* v. *Dennett.* It said: "The city of Santa Cruz had power, under the constitution and laws of California, to refund its outstanding indebtedness, evidenced by bonds and warrants. The nature and extent of such indebtedness were matters peculiarly within the knowledge of its constituted authorities. When, therefore, the refunding bonds in suit were issued with the recitals therein contained, the city thereby represented that it issued them under and in pursuance of and in conformity with the act of 1893 and the constitution of the State. As nothing on the face of the bonds suggested that such representations were false, purchasers had the right to assume that they were true, especially in view of the broad recital that everything required by law to be done and performed before executing the bonds had been done and performed by the city. As there was power in the city to issue refunding bonds to be used in discharging its outstanding indebtedness of a specified kind, purchasers were entitled to rely upon the truth of the recitals in the bonds that they were of the class which the act of 1893 authorized to be refunded. They were under no duty to go further and examine the ordinances of the city to ascertain whether the recitals were false. On the contrary,

purchasers could assume that the ordinances would disclose nothing in conflict with the recitals in the bonds."

In the more recent case of *Stanly County* v. *Coler*, 190 U. S. 437, the court reviewed many of the adjudged cases and in support of the conclusion there reached cited, among other cases, that of *Evansville* v. *Dennett.* See also the recent case of *Quinlan* v. *Green County*, 205 U. S. 410.

Our conclusion on this branch of the case is that the county of Presidio is estopped by the recitals in its bonds to deny, as against a legal holder of the bonds, that they were issued conformably, in all respects, with the acts of legislation referred to.

It is, however, contended that this principle only affords protection to *bona fide* purchasers for value. But clearly the plaintiff is to be taken, upon the present record, as belonging to that class; for, there was no evidence that it had knowledge or notice of any facts impeaching the validity of the bonds, or that were inconsistent with their recitals, nor was there any evidence showing that the plaintiff was not a *bona fide* purchaser for value of these bonds. In the absence of such proof the presumption was that the plaintiff obtained the bonds underdue, or before maturity, in good faith, for a valuable consideration, without notice of any circumstances impeaching their validity. The production of a negotiable instrument sued on, with proof of its genuineness, if its genuineness be not denied, makes a *prima facie* case for the holder. In other words, the possession of the bonds in this case, their genuineness not being disputed, made a *prima facie* case for the plaintiff. These views are in accordance with accepted doctrines of the law relating to negotiable securities, *Swift* v. *Tyson*, 16 Pet. 1, 16; *Murray* v. *Lardner*, 2 Wall. 110, 121; *Chambers County* v. *Clews*, 21 Wall. 317, 323; *San Antonio* v. *Mehaffy*, 96 U. S. 312, 314; *Montclair* v. *Ramsdell*, 107 U. S. 147, 158; 2 Parsons' Bills and Notes, 9; *Pinkerton* v. *Bailey*, 8 Wend. 600; Story on Promissory Notes, § 196; 1 Daniel on Negotiable Instruments, 5th ed., § 812, and the authorities there cited; Chitty on Bills, 11th

Amer. ed. 69; *Arbouin* v. *Anderson*, 1 Adolph. & Ellis, New R. 498, 504.

But there is another defense by the county which must be noticed. It is, that the validity of these bonds has been adjudicated by the courts of Texas, and that that adjudication concludes the plaintiff in the present action. The facts upon which that defense is based are these: On the twenty-eighth of March, 1893, Ball, Hutchings & Co. sued Presidio County on certain *coupons* of bonds, numbered from 90 to 96, inclusive, and dated December 6th, 1886—the same bonds here sued on, except bond numbered 93, which is not involved in this suit. The county, among other defenses, alleged that the bonds were issued and delivered to contractors for the purpose of obtaining *furniture* for the courthouse; that the contractors therefore had notice of the purpose for which the bonds were issued; that their issue for the purpose of supplying the courthouse with furniture was illegal, fraudulent and void; and, therefore, no judgment could be rendered for the amount of the coupons sued on. The state court rendered a judgment for the county. From that judgment an appeal was prosecuted to the Civil Court of Appeals of Texas, which reversed the judgment and ordered one against the county. 27 S. W. Rep. 702, 707. That court, among other things, held that there was nothing in the order of February 9th, 1886 indicating that the bonds numbered 90 to 96 were not of the bonds therein ordered to be issued for courthouse and jail purposes; that no question was made that the amount of all the bonds issued for building a courthouse and jail and for furniture and waterworks was not within the county's statutory limit for the issuing of bonds for the building of a courthouse and jail; and that it was not inconsistent with their being part of the bonds ordered for courthouse and jail purposes that they were numbered from 90 to 96. That court further said: "These bonds purport on their face to have been issued by virtue of the acts authorizing bonds for the erection of a courthouse and jail, and, by virtue of a certain order of the proper court, which was, upon its face, authority

for the issuance of a bonded debt for said purpose, in the sum
of $86,000; and there is nothing in the order to indicate to the
mind that there had been an overissue, or that these particular
bonds were not a part of the $86,000. . . . In fact, these
bonds would seem to have been prepared and issued in a manner
that concealed their true character, and to mislead investors
in that class of securities; and we are of opinion, on the whole
case, that the county is estopped to deny its liability to the
purchasers."

This last observation of the Texas Civil Court of Appeals
had, no doubt, reference to the fact (which evidence in this suit
tended to establish), that although the particular bonds in
suit were issued pursuant to an order of the Commissioners'
Court made December 4th, 1886 to pay for courthouse *furniture*
they contained recitals fairly implying that they were issued
under the order of February 9th, 1886 and the statutes for the
purpose of building a courthouse and jail.

That case was taken to the Supreme Court of Texas, which
reversed the judgment of the Civil Court of Appeals and
affirmed the judgment of the court of original jurisdiction.
*Ball, Hutchings & Co.* v. *Presidio County,* 88 Texas, 60–66.
The Supreme Court of Texas assumed, for the purposes of its
opinion, that the County Commissioners' Court had the power
under the acts of the legislature to issue bonds of the county
for courthouse and jail purposes to the full amount of $96,000.
Yet, it said, the order of February 9th, 1886, referred to in the
bonds, showed that only $86,000 of bonds were authorized by
that order to be issued for such purposes, and, therefore, that
the bonds in suit were issued without any order to support
them; that "the law requires" a dealer in county bonds to
know the provisions of the act of the legislature and *the order
of the County Commissioners' Court,* under and by virtue of
which such bonds were issued, whether referred to on the face
of the bonds or not; that the facts made known by the order of
February 9th, 1886 were sufficient to put a purchaser on inquiry
as to whether the coupons of the bonds now in suit were in

excess of the amount authorized by that order; that the burden of proof being upon Ball, Hutchings & Co. to show that they were *bona fide* holders, it was incumbent on them, as plaintiffs, to prove that proper diligence had been used to ascertain the facts; and that having made no such proof, they were not entitled to judgment.

It is apparent that the Supreme Court of Texas proceeded in part upon grounds inconsistent with the decisions of this court in cases involving the rights of the holders of commercial paper. We allude here particularly to that part of its opinion holding that whatever the import of the recitals in the bonds a purchaser was bound to ascertain what were the provisions of the order of February 9th, 1886, under and by virtue of which the bonds purport to have been issued. In that view we do not concur, as what has been said in this opinion sufficiently indicates. Since the decision in *Swift* v. *Tyson*, 16 Pet. 1, 19, it has been the accepted doctrine of this court that, in respect of the doctrines of commercial law and general jurisprudence the courts of the United States will exercise their own independent judgment, and in respect to such doctrines will not be controlled by decisions based upon local statutes or local usage, although, if the question is balanced with doubt, the courts of the United States, for the sake of harmony, "will lean to an agreement of views with the State courts." To that effect are *Burgess* v. *Seligman*, 107 U. S. 20, 33, 34; *Pana* v. *Bowler*, 107 U. S. 529, and *Oates* v. *National Bank*, 100 U. S. 239, 246, *and authorities cited in each case.* But in the present suit and upon the particular question now under consideration it is, perhaps, immaterial that the learned Supreme Court of Texas did not proceed on grounds consistent with the settled doctrines of this court on questions of commercial law; for, that court having jurisdiction of the case before it the question to be met is whether the judgment actually rendered by that court in *Ball, Hutchings & Co.* v. *Presidio County*, as matter of law, concludes the plaintiff in this suit.

In determining that question certain facts may be taken as

established by the proof introduced by the county and which it deemed material, namely: 1. That the suit in the state court was upon interest coupons, and not upon the bonds to which they were attached. 2. That on December 10th, 1886, after the bonds were issued, F. M. Ball purchased those here in suit from the contractor to whom they were delivered on account of *furniture* supplied for the courthouse, and on the same day one League purchased from Ball four of the bonds. 3. Both Ball and League purchased, in good faith, at par and interest, without notice of any facts impeaching the validity of the bonds. 4. That their purchases were before the action in the state court, which was not commenced until August 15th, 1902. 5. That when that suit was begun, the bonds, so far as appears from the record, belonged to Ball and League, and remained under their control during the pendency of that suit and were not produced in court. 6. Ball, Hutchings & Co., the plaintiffs in that suit, were only the agents for the collection of the interest coupons. 7. It does not appear from the present record when the Noel-Young Bond & Stock Co., the present plaintiff, became the holder and owner of the bonds, whether during the pendency of the suit in the state court or after the final judgment on March 4th, 1895 in the Supreme Court of Texas.

The argument in support of the conclusiveness of the judgment necessarily rests on the ground that the suit on the coupons created a *lis pendens* that prevented any one from purchasing the bonds except subject to such judgment as might be rendered on that suit. But, clearly, the negotiability of the bonds was not destroyed by the mere bringing or pendency of the suit on the coupons, although the issue in that suit as to the validity of the coupons may have incidentally involved an inquiry as to the validity of the bonds to which they were attached. It may be that the holder of negotiable coupons sued on, being also, at the time, the holder and owner of the bonds, may be concluded, *as between him and the county*, in a subsequent suit on the bonds, by a previous judgment on the coupons in the suit, in which the coupons were held invalid be-

cause attached to invalid bonds. But one who became a *bona fide* purchaser for value of the bonds, after the institution of the suit on the coupons, not being himself a party to or having notice of that suit, will not be concluded by the judgment as to the coupons. A suit on coupons and a suit on the bonds are based on different causes of action. The coupons and bonds were capable of separate ownership and of separate suits. Judgment might be rendered on coupons without producing the bonds to which they were originally attached. In *Nesbit* v. *Riverside Independent District*, 144 U. S. 610, 611, 618, which was an action on county bonds, and in which it was a question whether a judgment in a former suit on coupons of certain bonds of the same issue barred an action on the bonds, this court said: "Now, the present suit is on causes of action different from those presented in the suit at Des Moines. Bonds 16, 17 and 18 were not presented or known in that suit; and while bonds 14 and 15 were presented, alleged to be the property of plaintiff, and judgment asked upon six coupons attached thereto, yet the cause of action on the six coupons is distinct and separate from that upon the bonds or the other coupons. Each matured coupon is a separable promise, and gives rise to a separate cause of action. It may be detached from the bond and sold by itself. Indeed, the title to several matured coupons of the same bond may be in as many different persons, and upon each a distinct and separate action be maintained. So, while the promises of the bond and of the coupons in the first instance are upon the same paper, and the coupons are for interest due upon the bond, yet the promise to pay the coupon is as distinct from that to pay the bond, as though the two promises were placed in different instruments, upon different paper." To the same effect is *Edwards* v. *Bates Co.*, 163 U. S. 269, 271. A purchaser, when buying the bonds, was not bound at his peril to know of the pendency of the suit on the coupons. He could buy without being concluded by a judgment rendered on coupons involved in a suit to which he was not a party, and of the pendency of which he had no notice.

An instructive case on this subject is *County of Warren* v. *Marcy*, 97 U. S. 96. That was an action on coupons attached to negotiable bonds issued by a county. The facts on which the defense was based were these: A taxpayer brought a suit against a county on behalf of himself and all other taxpayers for an injunction to prevent the county from making a subscription to the stock of a certain railroad company. A temporary injunction was granted, which was afterwards dissolved, and the bill was dismissed. The plaintiff appealed to the Supreme Court of the State, which reversed the judgment and a decree was ordered to be entered, and was entered, enjoining the county from making the proposed subscription. Pending the suit and after the dissolution of the temporary injunction, and while the case was pending on appeal, the county made the subscription sought to be enjoined, and issued and delivered to the railroad company the bonds to which the coupons there in suit were attached. Marcy purchased some of the bonds for value before maturity, and without any actual notice of their alleged invalidity, or of any suit in relation thereto. The question in the case was whether the pendency of the equity suit to prevent the subscription and an issue of bonds was constructive notice to all persons of the invalidity of the bonds issued in payment for the subscription.

This court, speaking by Mr. Justice Bradley, held the bonds to be valid in the hands of a *bona fide* purchaser for value upon these grounds, saying: "That if a municipal body has lawful power to issue bonds or other negotiable securities, dependent only upon the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith has a right to assume that such preliminary proceedings have taken place, if the fact be certified on the face of the bonds themselves, by the authorities whose primary duty it is to ascertain it." On the question of *lis pendens* the court said: "It is a general rule that all persons dealing with property are bound to take notice of a suit pending with regard to the title thereto, and will, on their peril,

purchase the same from any of the parties to the suit. But this rule is not of universal application. It does not apply to negotiable securities purchased before maturity, nor to articles of ordinary commerce sold in the usual way. This exception was suggested by Chancellor Kent, in one of the leading cases on the subject in this country, and has been confirmed by many subsequent decisions"—citing *Murray* v. *Ballou,* 1 Johns. (N. Y.) Ch. 566; *Murray* v. *Lylburn,* 2 Johns. Ch. 441; *Kieffer* v. *Ehler,* 18 Pa. St. 388; *Winston* v. *Westfeldt,* 22 Alabama, 760; *Stone* v. *Elliott,* 11 Ohio St. 252; *Mims* v. *West,* 38 Georgia, 18; *Leitch* v. *Wells,* 48 N. Y. 585; *Durant* v. *Iowa County,* 1 Woolw. 69. The court also referred to *City of Lexington* v. *Butler,* 14 Wall. 283, saying: "In that case irregularities had occurred in the preliminary proceedings, and the city authorities refused to issue the bonds. A *mandamus* was applied for by the railroad company, for whose use the bonds were intended; and judgment of *mandamus* was rendered compelling the city to issue them, and it issued them accordingly. Subsequently, this judgment was reversed by the Court of Appeals of Kentucky, and an injunction was obtained to prevent the railroad company from parting with the bonds. The injunction was not obeyed; the bonds were negotiated whilst proceedings were still pending, and were purchased by the plaintiff for value before maturity, without any knowledge of these circumstances. This court held that the bonds were valid in his hands   .   .   . Whilst the doctrine of constructive notice arising from *lis pendens,* though often severe in its application, is, on the whole, a wholesome and necessary one, and founded on principles affecting the authoritative administration of justice, the exception to its application is demanded by other considerations equally important, as affecting the free operations of commerce, and that confidence in the instruments by which it is carried on, which is so necessary in a business community." In *Orleans* v. *Platt,* 99 U. S. 676, 682, the court said: "The doctrine of *lis pendens* has no application to commercial securities." See also *County of Cass* v. *Gillette,* 100 U. S. 585, 593, and

*Carroll County* v. *Smith,* 111 U. S. 556, 562, to the same effect.

We hold that upon the present record the plaintiff company is to be taken as having purchased the bonds here in suit before maturity and for value, without notice of any circumstances indicating that their validity was or could be impeached; consequently, the judgment in favor of the county in the suit brought in the state court by Ball, Hutchings & Co. on some of the coupons of the bonds now in suit—in which suit the present plaintiff company was not a party and of which it is not shown to have had notice—does not preclude a judgment in its favor against the county on the bonds.

For the reasons stated, the judgment of the Circuit Court of the United States must be affirmed.

                                        *It is so ordered.*

THE CHIEF JUSTICE dissents.