844

## BUSH v. BREMNER.

District Court, D. Minnesota, Second Division.
December 19, 1928.

Davis, Michel & Yaeger, of Minneapolis, Minn., for plaintiff.

C. W. Wright, M. M. Joyce, and Gerald W. Swanstrom, all of Minneapolis, Minn., for the defendant.

CANT, District Judge. In this case the plaintiff was injured while traveling as a passenger over a line of railway operated by the defendant between the city of Minneapolis, in the state of Minnesota, and the village of Wood Lake, in said state. That portion of the line of railway over which plaintiff was transported was wholly within the state of Minnesota. He was riding on a free pass, so called, and paid no consideration whatever therefor. At the time in question plaintiff's residence was in the state of Washington. From such place of residence to the city of Minneapolis aforesaid plaintiff was furnished free transportation by means of a pass or passes over the line or lines of railway on which he traveled. These passes, together with the pass next hereinafter referred to, were all procured at or about the same time for the purpose of enabling the plaintiff to make a practically continuous trip from his place of residence to Wood Lake aforesaid. The pass on which plaintiff traveled between the city of Minneapolis and the Village of Wood Lake was issued in the state of Minnesota, and was good for passage between said points only.

Through the negligence of those in charge of the operation of the train on which plaintiff was riding between the points last mentioned, he was injured while he was attempting to alight from such train at Wood Lake. Under the conditions of the pass on which plaintiff was then riding, he agreed to make no claim for damages against defendant on account of any personal injuries which he might sustain as a passenger on trains operated by defendant while riding on said pass, whether such injuries should be caused by the negligence of those operating the train, or otherwise. Under a decision of the Supreme Court of the state of Minnesota (Jacobus v. The St. Paul & Chicago Ry. Co., 20 Minn. 125 [Gil. 110] 18 Am. Rep. 360), such agreement or condition attached to a free pass of the character here in question, is void as against public policy. Plaintiff urges that the rule so announced should be followed by this court in the pending case. Defendant urges that it should not. The resulting question is for determination here. Such question is not covered or affected by any statute of the state of Minnesota.

The determination of this question is affected by two separate rules: (1) By the rule prescribed in section 34 of the Judiciary Act of 1789; U. S. C. title 28, § 725 (28

USCA § 725). (2) By the rule which requires that most respectful consideration be given to the decisions of the state courts. This latter rule is in the nature of a certain comity between the courts of the two jurisdictions, and because of a desire, so far as possible, to unify our system of jurisprudence, rather than to introduce or encourage discord and conflict therein. Burgess v. Seligman, 107 U. S. 20, 34, 2 S. Ct. 10, 27 L. Ed. 359.

■ (1) Section 34 of the Judiciary Act of 1789, supra, reads as follows: "The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." The true meaning of this section was expounded by the Supreme Court in Swift v. Tyson, 16 Pet. 1, 18, 19, 10 L. Ed. 865. The doctrines there announced have been continuously followed and have been reaffirmed as late as the case of Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U. S. 518, 530, 48 S. Ct. 404, 72 L. Ed. 681. In the case of Swift v. Tyson, it was contended that, in controversies arising within the state of New York, the decisions of the state courts of that state were binding upon the federal tribunals. Upon that point, Mr. Justice Story, in delivering the opinion of the court at pages 18 and 19 of 16 Pet., said:

"In order to maintain the argument, it is essential, therefore, to hold, that the word 'laws,' in this section, includes within the scope of its meaning, the decisions of the local tribunals. In the ordinary use of language, it will hardly be contended, that the decisions of courts constitute laws. They are, at most, only evidence of what the laws are, and are not, of themselves, laws. They are often re-examined, reversed and qualified by the courts themselves, whenever they are found to be either defective, or ill-founded, or otherwise incorrect. The laws of a state are more usually understood to mean the rules and enactments promulgated by the legislative authority thereof, or long-established local customs having the force of laws. In all the various cases, which have hitherto come before us for decision, this court have uniformly supposed, that the true interpretation of the thirty-fourth section limited its application to state laws, strictly local, that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intraterritorial in their nature and character. It never has been supposed by us, that the section did apply, or was designed to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation, as, for example, to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law, where the state tribunals are called upon to perform the like functions as ourselves, that is, to ascertain, upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case. And we have not now the slightest difficulty in holding, that this section, upon its true intendment and construction, is strictly limited to local statutes and local usages of the character before stated, and does not extend to contracts and other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence. Undoubtedly, the decisions of the local tribunals upon such subjects are entitled to, and will receive, the most deliberate attention and respect of this court; but they cannot furnish positive rules, or conclusive authority, by which our own judgments are to be bound up and governed."

From this decision, it is clear (1) that it is "the *laws* of the several states" which, by the section in question, are given controlling force and effect; (2) that by the term "laws" in this connection, is meant the legislative enactments of a state, or long-established local customs having the force of laws; (3) that long-established local customs having the force of "laws" or "local usages of a fixed and permanent operation," as sometimes expressed, are such as relate to or affect "rights and titles to things having a permanent locality such as the rights and titles to real estate and other matters immovable in their nature and character." See further as to the accepted meaning of these expressions,—Barber v. Pittsburgh, etc., Ry. Co., 166 U. S. 83, 99, 17 S. Ct. 488, 41 L. Ed. 925; Boyce v. Tabb, 18 Wall. 546, 548, 21 L. Ed. 757; Railroad Co. v. National Bank, 102 U. S. 14, 31, 53–54, 26 L. Ed. 61. (4) That no customs or usages, as so defined, are involved here; and (5) That the decisions of the state courts are not "laws" within the meaning of the section here under considera-

tion. Upon the last statement not only is Swift v. Tyson an authority, but the following cases are directly in point: Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U. S. 518, 48 S. Ct. 404, 72 L. Ed. 681.

█ (2) This case, therefore, does not fall within the provisions of section 34 of the Judiciary Act, supra, and is not governed thereby. It lies in a field quite beyond the provisions of that section, and the question next for consideration is whether by reason of comity, the rule in the Jacobus Case, supra, 20 Minn. 125 (Gil. 110), 18 Am. Rep. 360, should be followed by the federal courts. Some of the courts have stated that in all such cases the effort and duty of the federal courts is and must be to ascertain and declare the law of the state where the controversy arises, in respect to the matter in hand. Strictly speaking, this is true only when the question and the law involved are within the scope of section 34, supra, but matters beyond the scope of that section lie within the field of general jurisprudence, or general law, and with respect to them, the duty of the federal courts is to resort to all available sources of information, and while inclined to follow the decisions of the courts of the state where the controversy arose, they must exercise their own judgment in determining and declaring what the true rule really is. Such determination may be in harmony with the state rule, or it may not. For these statements, the cases last above cited are ample authority. See, also, Presidio County v. Noel-Young Bond Co., 212 U. S. 58, 73, 29 S. Ct. 237, 53 L. Ed. 402.

█ In further support of such statements, it is apparent that in respect to various questions where the state and federal courts have concurrent jurisdiction, and where Section 34, supra, does not apply, each court declares its own views, and these stand as the rule in the respective jurisdictions, even though the two sets of courts adopt rules which are in conflict with each other. Delmas v. Insurance Co., 14 Wall. 661, 665 [668, 20 L. Ed. 757]. "In Grogan v. Adams Express Co., 114 Pa. St. 523 [7 A. 134, 60 Am. Rep. 360] the Supreme Court of Pennsylvania expressly declined to follow the rule laid down in Hart v. Railroad [112 U. S. 331, 5 S. Ct. 151, 28 L. Ed. 717], adhering to its own declared doctrine denying the right of a common carrier to thus limit its liability for injuries resulting from negligence. The cases are numerous and conflicting, different rules prevailing in different states. The federal courts in cases of which they have jurisdiction will doubtless continue to follow the rule of the Hart Case, but the highest court of Pennsylvania may administer the common law according to its understanding and interpretation of it, being only amenable to review in the federal Supreme Court where some right, title, immunity or privilege, the creation of the federal power, has been asserted and denied." Pennsylvania R. Co. v. Hughes, 191 U. S. 477, 486, 24 S. Ct. 132, 134 (48 L. Ed. 268).

It follows, therefore, that when a case involving questions not covered by section 34, supra, is instituted and tried in a state court, the rules of that state control and there is no power in the federal courts to interfere with such decision, except in the limited number of cases in which a writ of error may be issued for the review of the decision of a court of last resort of a state by the Supreme Court of the United States, or by review of such decision on certiorari. U. S. C. title 28, section 344; Pennsylvania R. Co. v. Hughes, supra. The case of New York Central R. Co. v. Mohney, 252 U. S. 152, 40 S. Ct. 287, 64 L. Ed. 502, 9 A. L. R. 496, is within this rule. If, on the other hand, such case should be instituted and tried in a federal court, the rules of that court apply and govern.

█ The questions in this case then, are in the field of general jurisprudence, or general law. This conclusion follows necessarily from the foregoing. It is definitely held in Lake Shore, etc., R. Co. v. Prentice, 147 U. S. 101, 106, 13 S. Ct. 261, 37 L. Ed. 97; Chicago Milw., etc., R. Co. v. Solan, 169 U. S. 133, 136, 18 S. Ct. 289, 42 L. Ed. 688. In ascertaining the true rule, the courts look to all available sources. Without serious question, the rule in the federal courts is that provisions such as those here involved, absolving a carrier from claims for damage on account of injuries to passengers riding on a free pass, are valid and enforceable. N. P. R. Co. v. Adams, 192 U. S. 440, 24 S. Ct. 408, 48 L. Ed. 513; Boering v. Chesapeake Beach R. Co., 193 U. S. 442, 24 S. Ct. 515, 48 L. Ed. 742; Charleston & W. C. Ry. Co. v. Thompson, 234 U. S. 576, 34 S. Ct. 964, 58 L. Ed. 1476; Kansas City Southern Ry. Co. v. Van Zant, 260 U. S. 459, 43 S. Ct. 176, 67 L. Ed. 348.

The reasons for the rule above stated have no relation to the question as to whether the pass involved in any case is for interstate transportation or is confined to transportation which is entirely intrastate. It is not reasonably possible to make a distinction and

hold that while such reasons render the exemption clause binding in cases of interstate transportation, they are not equally binding in cases where the transportation is intrastate. This leads to the conclusion that the Jacobus Case (20 Minn. 125 [Gil. 110]), being in conflict with the decisions of the Supreme Court of the United States, cannot be followed here; that the clause in question, exempting the carrier from liability and constituting one of the provisions of the free pass on which plaintiff was being transported, is valid, and that under the rules applicable in such cases, no recovery may be had.