STARMOUNT CO. v. OHIO SAV. BANK & TRUST CO. et al.

OHIO SAV. BANK & TRUST CO. v. TOWN OF HAMILTON LAKES.

FIRST NAT. BANK OF OAK HARBOR v. SAME.

No. 3220.

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1932.

E. S. Parker, Jr., of Greensboro, N. C. (Julius C. Smith and Brooks, Parker, Smith & Wharton, all of Greensboro, N. C., on the brief), for appellant.

Charles A. Hines, of Greensboro, N. C., and Robert R. Reed, of New York City (Wm. Henry Hoyt, of New York City, and Norman A. Boren, of Greensboro, N. C., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

These consolidated actions were brought by Ohio corporations, engaged in the banking business, against the town of Hamilton Lakes, incorporated under the laws of the state of North Carolina, to obtain judgment for the amount of the principal and interest due and owing upon certain municipal bonds issued by the town and owned by the corporations. No. defense was interposed by the town; but the Starmount Company, a North Carolina corporation, which had become the owner of nearly all the land included within the corporate limits of the municipality, was allowed to intervene, and it set up the defenses that the town was not a properly constituted municipal corporation of the state, and that the bonds were invalid, because they had not been issued in accordance with the constitution and laws of North Carolina.

It was stipulated and agreed in writing by the parties that the issues of fact should be tried and determined by the District Judge without the intervention of a jury. The evidence discloses the following facts: The land within the town limits, consisting of approximately 1,400 acres, is situated in Guilford county, N. C., and adjoins the corporate limits of the city of Greensboro. A. M. Scales was formerly the owner of about 1,256 acres in this tract, and had undertaken to lay it out for building lots in a suburban real estate development. On July 31, 1924, he borrowed $400,000 from the Revolution Cotton Mills, a North Carolina corporation, and executed and delivered a deed of trust on the land to secure the payment of the debt. Early in August, 1924, he organized a private corporation, under the laws of North Carolina, known as Hamilton Lakes, Inc., and conveyed to it his land, subject to the

deed of trust. The vice president of the Revolution Cotton Mills was elected vice president and director of the new corporation, and the Cotton Mills was given stock of the par value of $100,000 as part of the consideration for the loan above mentioned; but Scales was much the largest stockholder in the new corporation, and dominated its acts and policies in the subsequent improvement of the property.

Later, Scales applied to the General Assembly of North Carolina for the passage of a private act, and on March 6, 1925, such an act was ratified and appears as chapter 161 of the Private Laws of North Carolina of 1925. Thereby a municipal corporation, under the name of "Town of Hamilton Lakes" was created, embracing within its corporate limits all of the property conveyed by Scales to Hamilton Lakes, Inc., subject to the deed of trust, and certain other property. The charter provided that the corporate powers of the town should be vested in a mayor, town council, and town manager, and named Scales, his attorney, and a tenant upon the land as the persons to constitute the council until after the first election to be held in May, 1927. Of these persons, the tenant only lived within the corporate limits. Scales was chosen mayor by the council, and the secretary and treasurer of the private corporation became the town clerk and tax collector of the municipality. When the town was incorporated, four families were resident upon the land. There were four voters of legal age, including the tenant and employees of the private corporation.

In August and September, 1925, the town council passed ordinances which authorized the municipality to issue and sell $100,000 of water and sewer bonds, and provided that the bonds should be issued as serial bonds in a designated form, which contained the promise to pay the bearer the sum of $1,000, with interest at 6 per cent., and declared that the bond was one of a series issued under and pursuant to the Municipal Finance Act of North Carolina. The bond also contained the following recital: "It is hereby certified and recited that all acts, conditions and things required to happen, exist and be performed precedent to and in the issuance of this bond, have happened, existed and been performed in regular and due form and time as required by the laws and constitution of said state; that provision has been made for the levy and collection of a direct annual tax upon the taxable property within said town sufficient to meet the payment of

the principal and interest of this bond as the same shall fall due; and that the total indebtedness of the said town, including this bond, does not exceed any constitutional or statutory limitation thereon."

Accordingly, $100,000 of water and sewer bonds were issued, under date of October 1, 1925, signed by the officers of the municipality. They were sold on November 6, 1925, for $100,000 to Hamilton Lakes, Inc., under the authority of an ordinance of the town council. The private corporation in turn sold the bonds to David Robinson & Co. of Chicago for the sum of $80,000, but, before the purchase was consummated, Scales executed a paper writing personally guaranteeing the payment of the principal and interest of the bonds.

On July 19, 1926, the town council, by ordinance, authorized the municipality to issue and sell $100,000 of street improvement bonds. Each bond contained the promise to pay to bearer the sum of $1,000, with interest at the rate of 6 per cent., and the statement that it was issued under the authority of and in full compliance with the Constitution and laws of North Carolina, with particular reference to the Municipal Finance Act. Each bond also contained a recital substantially to the same effect as the recital in the water and sewer bonds that all acts required to be done precedent to the issuance of the bond had been done and performed as required by the Constitution and laws of the state. The bonds were issued under date of September 1, 1926, and were sold for $100,000 to Hamilton Lakes, Inc., under the authority of an ordinance of the town council, and by that corporation in turn sold to David Robinson and Company at 80 cents on the dollar.

When the first issue of bonds was put out, there were four families living upon the land, and, at the time of the issuance of the street improvement bonds, five families were resident thereon. Both issues were made with the knowledge and consent of the vice president of Revolution Cotton Mills who voted for the purchase of the same as a director and vice president of Hamilton Lakes, Inc.

On March 2, 1927, the General Assembly of North Carolina ratified as chapter 98 of the Private Laws of North Carolina of 1927, an act to validate the bonds of the town of Hamilton Lakes. The act provided that the municipality as theretofore established was thereby validated and confirmed, with Scales and his associates constituting the official board to remain in authority until their successors should be duly elected and qualified.

The $100,000 of water and sewer bonds and the $100,000 of street improvement bonds were validated and declared legal and binding municipal obligations, and the sale of them was confirmed and validated, irrespective of any irregularities or requirements to the contrary. The act contained the following provision: "Sec. 3. That said bonds signed by the officials in office when same were dated shall be forever incontestable in any court in North Carolina, and no action questioning the validity of same shall be instituted in any court in North Carolina unless same has been instituted prior to ratification of this act."

During the period from December, 1925, to February, 1927, sewage and water systems were installed, including 8½ miles of water mains and 7½ miles of sewer mains. Three miles of streets were paved, and, in addition, about 22 miles of streets were laid out and graded. All of this work was done at a cost in excess of $200,000. None of the paved streets adjoined the property of the persons resident upon the land when the bonds were issued, nor did any part of the sewage system serve their residences, but an eight-inch water main adjoined the lots of three of the residents. About 250 acres were laid out in building lots, and, by reason of the improvements, lots were sold at prices aggregating a sum in excess of $185,000 prior to February 1, 1928. The purchasers of the lots were desirable residents of Guilford county. The nearby city of Greensboro has a population in excess of 55,000.

The obligation of Scales to pay $400,000 to Revolution Cotton Mills became the property by assignment of Mrs. Edward B. Benjamin. It was not paid when due, and the deed of trust securing it was foreclosed, and, at the foreclosure sale, the 1,256 acres covered by the deed of trust were purchased by the Starmount Corporation, which had been organized by Mrs. Benjamin to take title to the property. On April 17, 1929, the property was conveyed by the trustee under the deed of trust to the Starmount Company. In the following month this corporation instituted a suit in the superior court of Guilford county, N. C., against the town of Hamilton Lakes, alleging that the town had not been lawfully created, and that the two bond issues had been illegally issued in contravention of the Constitution and laws of North Carolina. The purpose of the suit was to secure a decree declaring that the town was not in law a municipal corporation, and that the bonds of the municipality were null and void,

and to secure an injunction against the town and its officials forbidding them from in any way attempting to collect from the Starmount Company, as the owner of the property, taxes, or assessments of any sort. The superior court took jurisdiction of the matter, and, being of the opinion, based upon the allegations of the complaint, that the bonds were not properly and legally issued, issued a decree restraining the town from attempting to sell the property of the Starmount Company for taxes, and the clerk of the court was directed to summon the municipality to show cause why the injunction should not be continued until the final hearing of the case. Hearing upon this order has been continued from time to time, and the case is still pending in the superior court.

Upon this evidence, the District Judge in the pending case made special findings of fact to the effect, amongst other things, that the bonds were issued for necessary expenses of the municipality; that the plaintiffs purchased the bonds without notice of any irregularity or invalidity in their issue; and that the Revolution Cotton Mills, predecessor in title of the intervener, had actual notice of the ordinances and resolutions relating to the authorization, sale, and issuance of the bonds. Taking into consideration these findings of fact, and the special acts of the Legislature of 1925 and 1927, the District Judge reached the conclusions of law that the town was a legally created and existing corporation; that the bonds were regularly issued pursuant to the Constitution and laws of North Carolina, for necessary expenses, and constituted valid obligations of the town; and that the action pending in the superior court of Guilford county was not a bar to the pending suit. Accordingly, the District Judge concluded that the municipality was indebted to the plaintiffs for the sum sued for, and entered a judgment in their behalf.

The intervener attacks the correctness of the court's conclusion relating to the action pending in the superior court of Guilford county, and contends that the general rule of law should be applied that, when two courts have concurrent jurisdiction over the subject-matter of an action, that court in which the action is first commenced is entitled to retain it and finally to determine it, citing 7 R. C. L. 1067; Louisville Trust Co. v. Knott (C. C. A.) 130 F. 820. But it is obvious that this rule has no application here. The pendency of a suit in the state court is not necessarily a bar to subsequent proceedings between the same parties concerning the same matter in a federal court having jurisdiction thereover. McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762; McClellan v. Carland (C. C. A.) 187 F. 915, 919; City of Ironton v. Harrison Const. Co. (C. C. A.) 212 F. 353, 355; Borden's Condensed Milk Co. v. Baker (C. C. A.) 177 F. 906, 912. It is sufficient to note that the plaintiffs in the pending case were not parties to the proceedings in the state court. There was no specific property within the control of the state court, and therefore no ground for the application of the rule that, where property is involved, the court which first gains jurisdiction shall retain control of the controversy until its final determination. See Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060; State-Planters' Bank & Trust Co. v. Parker (C. C. A.) 50 F.(2d) 156.

The more important objections of the defendant in this suit are (1) that the charter of the town was invalid, and (2) that the bonds themselves were issued contrary to the Constitution and laws of the state. The first objection seems to rest upon the point that under section 2780 of the Consolidated Statutes of North Carolina not less than fifty persons, of whom at least twenty-five shall be freeholders or homesteaders, are required to organize a town, and twenty-five qualified voters must live in the area concerned. There are other minor objections; but all were cured by the validating act of 1927. The Constitution of North Carolina contains no restriction against the setting up of a municipal corporation by the Legislature at any place, but the matter is left to legislative discretion. See Constitution of North Carolina, article 8, § 4; Chimney Rock v. Lake Lure, 200 N. C. 171, 156 S. E. 542; Holton v. Mocksville, 189 N. C. 144, 126 S. E. 326. It is suggested that the incorporation of the town was merely a device to make possible the issuance of bonds which would be secured by the obligation of the municipality to levy taxes on the land, and would thereby take precedence of the debt secured by the deed of trust. Such undoubtedly was the practical effect of the transactions, but there is no evidence of fraud or of bad faith with respect to the obligation due the mortgagee. On the contrary, the bond issues were made with the knowledge of the mortgagee, whose vice president was a director of the Hamilton Lakes, Inc., and voted for the resolution of the board which authorized the purchase of the bonds. The proceeds of the bonds

were expended, as we have seen, for the development of the property in the hope that it would prove to be a successful suburban enterprise.

■ Similarly, the act of 1927 effectually cured any defect in the bonds themselves so far as it lay within the legislative power to do so. We need not therefore stop to inquire whether the bonds were issued under a charter provision requiring a submission of the question to the voters, or, under the Municipal Finance Act of North Carolina, codified as sections 2918 to 2969 of the Code of 1931, under which an election is not required. Nor need we discuss the contention that the bonds were illegally sold, because they were purchased by Hamilton Lakes, Inc., a private corporation controlled by the mayor of the town, who was forbidden, by section 4388 of the North Carolina Code, to enter into a contract with the city. By the act of 1927, passed before the intervener acquired the property, the issuance and sale of the bonds were expressly confirmed and validated, irrespective of any irregularities or requirements to the contrary. It is well settled in North Carolina that such legislative action removes all objections based upon the violation or nonperformance of statutory provisions. Brown v. Hillsboro, 185 N. C. 370, 117 S. E. 41; Kinston v. Trust Co., 169 N. C. 207, 85 S. E. 399; Wharton v. Greensboro, 149 N. C. 62, 62 S. E. 740.

■ The intervener, however, earnestly contends that the validating act had no effect upon the bonds because it was in conflict with section 7 of article 7 of the state Constitution, which provides that no town shall contract any debt except for the necessary expenses thereof, unless by the vote of the majority of the qualified voters. No election was held; and hence it is said that the bonds were invalid because the evidence does not show that they were issued to cover necessary expenses of the town. The argument is that there was no necessity for street paving or for a water or sewer system to accommodate four or five families living upon 1,400 acres of land. The District Judge made a special finding of fact to the contrary, and, in view of the proximity of the land to a city of substantial size, and the proposed use of the property for suburban residences, there is much to support the finding. But we think that, under the North Carolina decisions, it is not incumbent upon us to enter into a consideration of this question of fact.

The Supreme Court of North Carolina has laid down the rule that the courts should pass upon the necessity of the expenses involved in a municipal bond issue as upon a mixed question of law and fact; and it has become the accepted meaning of the constitutional provision that it is the province of the courts to decide whether a particular municipal expense falls within the category of necessary expenses, leaving to the municipal authorities the power to determine whether a proposed expense within that category is necessary in a given case. The leading case is Brodnax v. Groom, 64 N. C. 244, and it has been cited by the North Carolina courts times without number. Thus in Wilson v. Charlotte, 74 N. C. 748, it was said: "It was held in Brodnax v. Groom, 64 N. C. 244, that if the object for which the money was to be raised came within the class of such as might be necessary for the county, it was left to the county commissioners to decide whether in fact it was necessary or not, and their decision could not be reviewed by the court. This was also held in Mitchell v. School Committee, 71 N. C. 400. No other rule could be adopted without inconvenience and injury. If no one could contract with a county for the building of a bridge, or with a city for the building of a market house, or other work coming apparently within the class of necessaries, and which the government of the corporation has deemed necessary, except at the risk of having the contract avoided by the decision of a court, which may take a view of the actual necessity different from that of the city government; then no one would contract without either charging an extra proportionate to the risk, or insuring safety by getting the opinion of the court if possible. The public business would be sacrificed or seriously obstructed, and the courts would assume the duties of municipal government, for which they were not intended.

And in Fawcett v. Mt. Airy, 134 N. C. 125, 45 S. E. 1029, 1030, 63 L. R. A. 870, 101 Am. St. Rep. 825, the court said: "The courts determine what class of expenditures made or to be made by a municipal corporation come under the definition of 'necessary expenses.' The governing authorities of the municipal corporations are vested with the power to determine when they are needed, and, except in cases of fraud, the courts cannot control the discretion of the commissioners."

■ It follows that there was no violation of the Constitution of North Carolina by

the town of Hamilton Lakes by reason of the failure of the town authorities to submit the bond issues in this case to vote at a special election, for it has been repeatedly held that street paving, waterworks, and sewerage systems are within the category of necessary expenses. In Storm v. Wrightsville Beach, 189 N. C. 679, 681, 128 S. E. 17, 18, it was said: "The term, in the Constitution, 'necessary expenses' is not confined to expenses incurred for purposes absolutely necessary to the very life and existence of a municipality, but it has a more comprehensive meaning. It has been held in this jurisdiction that streets, waterworks, sewerage, electric lights, fire department and system, municipal building, market house, jail or guard house are necessary expenses."

The Constitution and laws of the state are to be given the interpretation placed upon them by the state courts, and that interpretation upholds the validity of the bonds. In addition, another well-established rule of general law laid down by federal as well as state courts support the bondholders' cases. The owners of the bonds were bona fide holders of the securities without notice of any infirmity, and they were privileged to rely upon the recital in the bonds that all acts and conditions precedent to issuance had been performed in accordance with the Constitution and laws of the state. The municipality by the same token was estopped to deny the truth of the allegations which the bonds contained. It is well settled that recitals by officers of a municipal corporation, vested with power to perform the conditions precedent to the issue of negotiable bonds, that all constitutional and legal requirements necessary to authorize the issuance of bonds have been met in a particular case, preclude an inquiry into the truth of the recitals against an innocent purchaser for value. Chaffee County v. Potter, 142 U. S. 355, 12 S. Ct. 216, 35 L. Ed. 1040; Gunnison County Comm'rs v. Rollins, 173 U. S. 255, 19 S. Ct. 390, 43 L. Ed. 689; Evansville v. Dennett, 161 U. S. 434, 16 S. Ct. 613, 40 L. Ed. 760; Waite v. Santa Cruz, 184 U. S. 302, 22 S. Ct. 327, 46 L. Ed. 552; Presidio County v. Noel-Young Bond Co., 212 U. S. 58, 29 S. Ct. 237, 53 L. Ed. 402; Henderson County, Tenn. v. Sovereign Camp (C. C. A.) 12 F.(2d) 883; Board of Comm'rs v. Coler (C. C. A.) 113 F. 705.

The judgment of the District Court is affirmed.