## SOUTHERN OIL CORPORATION v. WAGGONER.

(Circuit Court of Appeals, Fifth Circuit. November 22, 1921.)

No. 3701.

1. **Courts ⊂═⊃340—Conformity statute subject to specific provisions of federal statutes.**

The conformity statute (Rev. St. § 914 [Comp. St. § 1537]) requires conformity of proceedings in the federal courts to the state practice only "as near as may be," and leaves the court with power to reject any subordinate provision of the state statutes which in its judgment would tend to defeat the ends of justice, and such requirement is also subordinate to any specific provision of the federal statutes as to pleading or procedure.

2. **Courts ⊂═⊃344—Federal courts required to ignore merely formal defects in pleadings or process.**

Under Rev. St. § 954 (Comp. St. § 1591), providing that "no summons * * * process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it," a court properly refused to quash a citation requiring defendant to appear at the next regular term, to be held "on the fourth Monday in March," which was the day fixed by law for the beginning of the term, because it further erroneously stated "it being the 29th day of March," which was merely surplusage, though under the state practice it would have rendered the process invalid.

3. **Appeal and error ⊂═⊃1170(1)—Technical errors not ground for reversal.**

Under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), providing that appellate courts shall give judgment without regard to technical errors which do not affect the substantial rights of the parties, denial of a motion to quash process, even if error, is not ground for reversal where defendant appeared and was not prejudiced by the alleged defect in the process.

4. **Trover and conversion ⊂═⊃11—Refusal of purchasers of lessees to deliver oil owned by lessor held a conversion.**

Plaintiff was a lessor of oil lands on a royalty of one-eighth of the product; the lessees sold their oil and delivered it, including plaintiff's share, into defendant's pipe line; on refusal of plaintiff to accept the price paid the lessees, defendant offered to deliver his share of the oil in kind, and plaintiff accepted the offer and designated the lines into which it should be delivered. *Held*, that defendant's failure to make such delivery constituted a conversion which entitled plaintiff to recover the market price at the time of the conversion.

In Error to the District Court of the United States for the Northern District of Texas; Robert T. Ervin, Judge.

Action at law by R. M. Waggoner against the Southern Oil Corporation. Judgment for plaintiff and defendant brings error. Affirmed.

. William J. Berne, of Fort Worth, Tex., for plaintiff in error.

W. F. Weeks and Tarlton Morrow, both of Wichita Falls, Tex., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge.   R. M. Waggoner was the owner of certain oil lands in Wichita county, Tex.   He had leased these lands to several lessees on a royalty of one-eighth of the oil produced.   The leases provided that said royalty should be delivered to the credit of lessor in the pipe line to which he may connect his wells.   These lessees thereafter made contracts for the delivery of certain quantities of oil to the Southern Oil Corporation (hereinafter styled defendant). The oil so delivered included the one-eighth part of production reserved as a royalty to said lessor, Waggoner.   The evidence offered by the defendant company admitted that it had received approximately 12,000 barrels of Waggoner's oil and had not paid him for it, but had tendered him $1.25 per barrel therefor, which he had refused.

It appeared from defendant's testimony also that from some time in September, 1919, a few days after defendant started to run the oil purchased, a controversy had arisen between it and Waggoner, he declining to sell his oil at the price defendant was paying for the seven-eighths of his lessees.   This controversy was continuing when on November 26, 1919, the defendant by letter, reciting that it understood Waggoner was unwilling to accept the price it was paying his lessees, tendered to Waggoner his one-eighth of the oil, which had been, or should thereafter be, run into its lines on the contracts it had made with such lessees to be delivered into such storage or pipe line connections as he might furnish or procure, and asked that he would at once make arrangements to handle his share.

On December 8th Waggoner acknowledged receipt of this letter, and asked for a statement of the amount of his oil held by defendant company.   On or about December 10th he notified defendant to deliver his oil into the pipes line of the American Refining Company or Texas Company, or that of any other common carrier, and demanded that defendant take no more of his oil.

On December 20, 1919, defendant was again notified to deliver said oil into the pipe line of the American Refining Company or the Texas Company.

The defendant failed to make or tender further any delivery of oil, and on January 24, 1920, Waggoner filed this suit in the United States District Court for the Northern District of Texas, alleging a conversion of said oil and that its market value during December, 1919, was $2.50 per barrel.

A citation issued on January 28, 1920, which required the defendant to appear at the next regular term of said District Court to be held "on the fourth Monday, it being the 29th day of March next, to answer the petition" in said case, and required the marshal to return same on or before March 29, 1920.   This citation was served on January 29, 1920, and returned by the marshal on February 21st.

On March 29, 1920, said defendant appeared specially for the sole purpose of filing a motion to quash said citation for want of certainty because requiring defendant to appear on the fourth Monday, March 29th next, and the writ to be returned on or before said date.

The motion was overruled, and the defendant answered.

The case was tried on October 1, 1920, and resulted in a verdict finding the conversion of 12,044.74 barrels of oil of the market price of $2.50 per barrel and assessing plaintiff's damages at $30,111.85, and judgment was entered accordingly.

1. The first point urged is that the citation was fatally defective and should have been quashed.

It is insisted that, as March 29th was not possibly the fourth Monday in March, the writ was void for ambiguity under the decisions of the Texas appellate courts, and would have been quashed in the state court, and that these rulings are controlling in the United States courts in Texas. .

The following among other cases are relied on as sustaining this contention: Taylor v. Taylor (Tex. Civ. App.) 157 S. W. 1184; Weems v. Watson, 91 Tex. 35, 40 S. W. 722; Kimmell v. Edwards (Tex. Civ. App.) 193 S. W. 363; Simms v. Micars (Tex. Civ. App.) 190 S. W. 544.

But, even if it be conceded that such would be the rule in the state courts, it does not follow that the same rule would obtain in the United States courts under the provisions of the federal statutes regulating the issuance and amendment of pleadings and process.

[1] While the act of Congress of June 1, 1872 (Rev. St. § 914; U. S. Comp. St. § 1537), provides:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such Circuit or District Courts are held, any rule of Court to the contrary notwithstanding"

—yet, as was decided by the Supreme Court of the United States:

"the conformity is required to be 'as near as may be'—not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose; it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such state statutes which, in their judgment, would unwisely incumber the administration of the law or tend to defeat the ends of justice in their tribunals." Indianapolis, etc., R. R. Co. v. Horst, 93 U. S. 291, 300 (23 L. Ed. 898).

This decision has been cited with approval, and the further rule laid down that—

"Whenever Congress has legislated upon any matter of practice, and prescribed a definite rule for the government of its own courts, it is to that extent exclusive of the legislation of the state upon the same matter. Ex parte Fisk, 113 U. S. 713, 721; Whitford v. Clark County, 119 U. S. 522." Southern Pacific Co. v. Denton, 146 U. S. 202, 209, 13 Sup. Ct. 44, 47 (36 L. Ed. 942).

[2] The Congress has provided a definite rule governing its own courts on the subject of abating, arresting, or quashing process, or the return thereon, in civil causes.

"No summons, writ, declaration, return, process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give a judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect, or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof; and such court shall amend every such defect and want of form, other than those which the party demurring so expresses; and may at any time permit either of the parties to amend any defect in the process or pleadings upon such conditions as it shall, in its discretion and by its rules, prescribe." Rev. St. § 954; U. S. Comp. St. § 1591.

This statute of the United States would prevail even if there was an express provision of a state statute to the contrary. Mexican Central Railway v. Duthie, 189 U. S. 76, 78, 23 Sup. Ct. 610, 47 L. Ed. 715.

Here the only defect in this citation was that, after calling on the defendant to appear at the next regular term of the court to be held on the fourth Monday in March, a day of the month was stated which could not have been such fourth Monday in March. The act of Congress (39 Stat. at L. 939 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1095b]) fixed the regular term of this court as convening on the fourth Monday in March. The citation summoned the defendant to appear at the regular term of said court, and said defendant was conclusively charged by the law with knowledge that the fourth Monday in March was the beginning of the regular term. He therefore could not lawfully have assumed that the regular term convened on any day but the fourth Monday in March, and should have regarded the words "it being the 29th day" as surplusage.

[3] Further, a recent act of Congress requires that—

This court, "on the hearing of any appeal, certiorari, writ of error * * * shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." 40 Stat. at L. c. 48, p. 1181 (Comp. St. Ann. Supp. 1919, § 1246).

It does not appear that the defendant has been in any way prejudiced by this misrecital of the date of the fourth Monday in March.

Had the court sustained the objection, under the federal statute first above quoted it would have resulted only in an amendment of the citation by striking the superfluous and erroneous date, and by the service of the citation so amended. The further steps in the case would have been the same as have taken place, to wit, pleading to the merits and a trial on the issues raised.

On the overruling of the motion to quash, such pleadings were filed and such a trial had. We therefore find no ground for reversing the judgment of the District Court because of the refusal to quash the citation.

[4] This case is one to recover damages for the conversion of the oil of the plaintiff Waggoner by the defendant; the plaintiff claiming as damages the market price of said oil at the time of said conversion.

It appears that there were two classes of buyers for said oil, the larger companies owning pipe lines and other smaller purchasers. The larger companies posted each month a price which they would pay for oil to the extent of their capacity for storing. This was known as the "posted price." The price offered by the other purchasers was less, and known as the "bootlegger" price. The posted price from August, 1919, to some time in November was considerably higher than the "bootlegger" price, and it was insisted that the court erred in admitting evidence of the posted price during August, 1919, and succeeding months, as it was not fairly evidence of the market value; the defendant insisting that the bootlegger price was the market price.

In the view we take of this case it is unnecessary to consider this question. It is admitted that by the end of November, 1919, the market price of oil such as that of plaintiff under either contention was quite $2.50 per barrel.

It is conceded by the defendant that at no time had it made any agreement with the plaintiff as to the purchase of his oil; that it knowingly received the plaintiff's share of the oil in order to get the portion of the oil of the lessees which it had purchased; it furnished to plaintiff from time to time statements showing such oil amounted to 12,044.74 barrels; and that plaintiff refused to sell his oil at the price which defendant was paying to said lessees. Finally, failing to agree on a purchase, on November 26, 1919, it tendered delivery to plaintiff of the oil, received and to be received, and plaintiff advised defendant of his readiness to accept such delivery.

When the defendant tendered to the plaintiff a delivery of his oil in kind and the plaintiff accepted the tender, called for the oil and designated the pipe lines through which defendant should deliver it, and the defendant thereafter failed to make any delivery, the defendant then converted the oil, and plaintiff could recover as damages for such conversion the then market price.

The judgment in this case is for no more than the evidence warrants, and is affirmed.