**N. & G. TAYLOR CO., Inc., v. ANDERSON et al.** *

(Circuit Court of Appeals, Seventh Circuit. June 4, 1926.)

No. 3556.

1. **Limitation of actions ⬚127(13)—Amended declaration in action on nonnegotiable written contract, so as to entitle plaintiff to maintain suit as assignee of contract under state statute, held statement of new cause of action then barred by limitations (Practice Act Ill. § 18; Rev. St. U. S. § 954 [U. S. Comp. St. 1591]).**

In action by corporation as purchaser of rights of partnership under nonnegotiable written contract, amendment of declaration, after running of applicable statute of limitations, so as to enable plaintiff to maintain suit under Practice Act Ill. § 18 (Cahill's Rev. St. Ill. 1923, c. 110), as assignee of contract, *held* the statement of a new cause of action then barred, notwithstanding Rev. St. U. S. § 954 (U. S. Comp. St. § 1591).

2. **Courts ⬚366(1).**

Interpretation of state statute by state Supreme Court should be final and binding on federal court.

Evan A. Evans, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by N. & G. Taylor Company, Inc., against John A. Anderson and another, copartners, doing business under the name of Anderson & Gustafson. Judgment for defendants, and plaintiff brings error. Affirmed.

Henry S. Drinker, Jr., of Philadelphia, Pa., for plaintiff in error.

H. P. Young, of Chicago, Ill., for defendants in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. N. & G. Taylor Company, a copartnership, made with the defendants a nonnegotiable written contract. After defendants had defaulted thereon, the copartnership, on February 1, 1917, sold all of its assets, including its rights under the contract, to appellant, called plaintiff, and plaintiff brought suit thereon in the Northern district of Illinois. After the time had run under the applicable statute of limitations, plaintiff amended its declaration by setting out the written contract and making allegations under oath, so as to enable it to maintain its suit under section 18 of the Illinois Practice Act (chapter 110, Cahill's R. S. Ill. 1923), as assignee of the contract. [1] The sole question, raised by a plea of

*Certiorari granted 47 S. Ct. —, 71 L. Ed. —.
14 F.(2d)—23

the statute of limitations, is: Did the amendment state a new cause of action? It is urged that, because of the broad powers of amendment given by section 954 of the Revised Statutes (Comp. St. § 1591), the practice in the federal courts differs from that in the state courts. The authority under the Illinois statutes to make amendments is broad enough to permit such amendments to be made either before or after the running of the statute of limitations, because in Illinois the statute is raised by affirmative plea. If not so raised, the amendment is as effective as though the statute had not run. The power to make the amendment is not here in question.

It is also urged, on the authority of certain language used in N. Y. Cent. R. Co. v. Kinney, 260 U. S. 340, 345, 43 S. Ct. 122, 67 L. Ed. 294, that the plea of the statute of limitations is less effective in the federal courts than in state courts. There the recovery was under Employers' Liability Act April 22, 1908, 35 Stat. 65, c. 149 (Comp. St. § 8657–8665). The pleadings are not set out, but the court said: "The original complaint set forth facts that would have given a cause of action at common law, under the statutes of New York or the act of Congress." The amendment alleged: "That at the time of the collision the plaintiff and defendant were engaged in interstate commerce." The statute did not require that fact to be stated, and if, without that amendment, a good cause of action was stated under the statute, then, as section 1 of that statute (Comp. St. § 8657), gives the remedy only against common carriers engaged in interstate commerce, it necessarily follows that the amendment did not state a new cause of action. The language of the opinion relied on was not, we think, material to the decision of the case.

Plaintiff most strongly relies upon Missouri, K. & T. Ry. v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134. In that case the mother, as sole beneficiary, sued the railway company under the Kansas statute to recover for the death of her son. Under that statute she might lawfully sue in her individual capacity. Subsequently she had herself appointed administratrix of her son's estate and in that capacity joined in the suit. The Supreme Court held that the action was under the federal Employers' Liability Act, and not barred, even though the first appearance of the administratrix as plaintiff was two years after the cause of action arose. The court said: "The change was in form rather than

in substance" citing Stewart v. B. & O. R. Co., 168 U. S. 445, 18 S. Ct. 105, 42 L. Ed. 537. Concerning that case, the Supreme Court, in U. S. Fidelity Co. v. Kenyon, 204 U. S. 349, 356, 27 S. Ct. 381, 383 (51 L. Ed. 516), said that the court's observation on that point was made "in the course of the discussion of the controlling questions in that case."

The Stewart Case was bottomed on Browne v. Strode, 5 Cranch, 303, 3 L. Ed. 108, McNutt v. Bland, 2 How. 9, 11 L. Ed. 159, State of Maryland v. Baldwin, 112 U. S. 490, 5 S. Ct. 278, 28 L. Ed. 822, and Gaither v. Farmers & Mechanics Bank, 1 Pet. 37, 42, 7 L. Ed. 43. In those cases, neither the question of the statute of limitations nor the question as to whether there was a new cause of action was either present or considered. The question was as to who, for jurisdictional purposes in the federal court, on the ground of diversity of citizenship, should be considered the party plaintiff in interest in suits on bonds, where the state or some public official is named as obligee; that is, whether it should be the obligee in the bond or the person for whose benefit the bond was given.

The McNutt Case is typical of the class of cases there in question. By the laws of Mississippi, sheriffs were required to give bonds to the Governor for the faithful performance of their duties. Suit was brought on such a bond in the federal court in Mississippi, in the name of the Governor, for the benefit of citizens of New York, against a citizen of Mississippi, and the court held that, notwithstanding the fact that the Governor and the defendant were residents of the state of Mississippi, the controversy was between citizens of New York, for whose benefit the suit was brought, and the Mississippi defendant, and that there was the required diversity of citizenship. The court said: "Where the real and only controversy is between citizens of different states, or an alien and a citizen, and the plaintiff is by some positive law compelled to use the name of a public officer who has not, or ever had any interest in, or control over it, the courts of the United States will not consider any others as parties to the suit, than the persons between whom the litigation before them exists."

In further elucidation of the question, the court said: "Executors and administrators are not in this position, they are the actors in suits brought by them; the personal property of the decedent is vested in them; the persons to whom they are accountable, for whose benefit they act, can bring no suit to assert their rights against third persons, be the cause of action what it may; nor can they interfere with the conducting of the suit to assert their rights to the property of the decedent, which do not vest in them. The personal representative is therefore the real party in interest before the court (Clarke v. Mathewson, 12 Pet. 171 [9 L. Ed. 1041]), and succeeds to all the rights of those they represent, by operation of law; and no other persons are capable, as representatives of the personalty, of suing or being sued. They are contradistinguished, therefore, from assignees who claim by the act of the parties, and may sue in the federal courts in cases where the decedent could not. Childress v. Emory, 8 Wheat. 668 [5 L. Ed. 705]; Chappedelaine v. Dechenaux, 4 Cranch, 308 [2 L. Ed. 629]."

See, also, Irvine v. Lowry, 14 Pet. 293, 297, 10 L. Ed. 462.

Even in those cases, the suits were brought in the name of the obligee for the use of those interested. Unless the Wulf Case is to the contrary, the Supreme Court, on the question of the federal jurisdiction invoked because of diverse citizenship, seems always to have held that executors and administrators are the real parties in interest. See Ingersoll v. Coram, 211 U. S. 361, 29 S. Ct. 92, 53 L. Ed. 208, and cases there cited.

In the hearing of the Wulf Case in the Supreme Court, Union Pac. Ry. Co. v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983, was relied on, but, the court distinguished between the Wulf Case and the Wyler Case by pointing out that the Wulf Case was simply one where a person who was entitled to the whole of the recovery had brought a suit under a Kansas statute, and by the amendment made no change except to join herself as administratrix, so as to bring the case under the federal statute, where she could not sue as an individual, whereas in the Wyler Case plaintiff, who had sued upon the common-law charge that the defendant had negligently employed and retained in its employ a fellow servant of the plaintiff, and that the injuries sued for arose from such negligence, by amendment, abandoned the common-law charge and "rested the cause of action exclusively upon the negligence of Kline, as a fellow servant, for the reason that a right of action was given in such case by the law of Kansas, where the accident occurred." Thus the court held that the amendment introduced a substantially new cause of action to which the bar of the statute of limitations applied. We are of

opinion that the difference between the Wyler Case and the Wulf Case is one of the material differences between the Wulf Case and the case at bar.

In the case at bar, independent of the Illinois statute, no suit could be maintained in a court of law other than by the copartnership. There was no suit ever commenced in its name, nor in its name for the use and benefit of another. The Supreme Court of Illinois, in construing section 18 of the Illinois Practice Act, under which plaintiff is attempting to maintain its suit, held: "A declaration in a suit by an assignee of a chose in action does not state a cause of action in favor of the plaintiff, unless it contains the allegations required by section 18, showing the assignment of the chose in action, the actual ownership thereof by him, and setting forth how and when he acquired title. A declaration which fails to allege a fact without whose existence the plaintiff is not entitled to recover does not state a cause of action. Walters v. City of Ottawa, 240 Ill. 259 [88 N. E. 651]; Prouty v. City of Chicago, 250 Ill. 222 [95 N. E. 147]." Gallagher v. Schmidt, 313 Ill. 40, 44, 144 N. E. 319, 321; Allis-Chalmers Mfg. Co. v. Chicago, 297 Ill. 444, 130 N. E. 736.

[2] From this holding, it necessarily follows that, as prior to the amendment there was no attempt to bring the case within the provisions of section 18, there was up to that time no statement whatever of a cause of action. A statement of a cause of action, under that section, was necessarily the statement of a new and different cause of action. The interpretation of the statute by the Supreme Court of the state should be final and binding upon this court. Elmendorf v. Taylor, 10 Wheat. 152, 158, 6 L. Ed. 289; Memphis Street Ry. v. Moore, 243 U. S. 299, 37 S. Ct. 273, 61 L. Ed. 733; Old Colony Trust Co. v. Omaha, 230 U. S. 100, 116, 33 S. Ct. 967, 57 L. Ed. 1410; Chicago v. Obermayer Co. (C. C. A.) 268 F. 237. There was no law by which plaintiff could maintain the suit, except under section 18 of the Illinois Practice Act.

The judgment is affirmed.

ALSCHULER, Circuit Judge (concurring). My concurrence is based wholly upon the interpretation of the Supreme Court of Illinois of section 18, chapter 110, and of the statute of limitations of that state, as applicable to causes of action brought under that section. A case involving the identical question here in issue was quite recently decided by the Illinois Supreme Court wherein that court said:

"The allegations in regard to any assignment by the Allis-Chalmers Company to the plaintiff do not appear in the original declaration, and no attempt to comply with this section of the Practice Act was made until the filing of the amended declaration on December 2, 1919, six years after the expiration of the period of limitation for bringing suits against the city for damages by reason of the vacation of the street. A declaration in a suit by an assignee of a chose in action does not state a cause of action in favor of the plaintiff unless it contains the allegations required by section 18, showing the assignment of the chose in action, the actual ownership thereof by him and setting forth how and when he acquired title. A declaration which fails to allege a fact without whose existence the plaintiff is not entitled to recover does not state a cause of action. Walters v. City of Ottawa, 240 Ill. 259 [88 N. E. 651]; Prouty v. City of Chicago, 250 Ill. 222 [95 N. E. 147]. The plea of the statute of limitations, therefore, presented a complete bar to the plaintiff's action. The amendment to the declaration was not a substitution of a proper party plaintiff for one in whose name the action had been improperly begun, but was the statement of a different cause of action in favor of the plaintiff by whom the suit was originally begun, based upon a different and contradictory state of facts." Allis-Chalmers Mfg. Co. v. City of Chicago, 297 Ill. 444, 130 N. E. 736, cited in Gallagher v. Schmidt et al., 313 Ill. 40, 144 N. E. 319.

If this interpretation be here applied, I see no escape from affirmance, however otherwise my inclination would be without the Illinois interpretation. There is here no element of a subsequently stated cause of action accruing under federal statutes such as the Employers' Liability Act, as was present in some of the reported federal cases. In my judgment the applicable statutes of that state and their interpretation by its Supreme Court must here control. See Nederland Life Ins. Co., Ltd., v. Hall, 84 F. 278, 27 C. C. A. 390.

EVAN A. EVANS, Circuit Judge (dissenting). Plaintiff is a corporation, organized to succeed and to take over the business of a copartnership operating under the same name, and which copartnership had, in November, 1916, entered into a contract with the defendant for the purchase of 1,200,000 gallons of oil at 5.05 cents per gallon, delivery dates being therein fixed. When the corporation copartnership agreement above referred to was made (January, 1917), defend-

ant had breached its contract, and thereafter continued to breach its agreement.

This action was brought within two years, with numerous counts in the declaration, but in none of them was there an allegation that the contract had been assigned by the copartnership to plaintiff. Upon the trial, which occurred some five years after the action was begun, such an amendment was allowed, and to the amended counts of the declaration defendant pleaded the statute of limitations, which was sustained, and a judgment was entered dismissing the complaint.

This miscarriage of justice is justified on the ground that the Illinois statute, which authorized suit to be brought by the real party in interest, the assignee, required such assignment to be alleged in the declaration. The section reads as follows:

"Sec. 18. The assignee and equitable and bona fide owner of any chose in action not negotiable, heretofore, or hereafter assigned, may sue thereon in his own name, and he shall in his pleading on oath, or by his affidavit, where pleading is not required, allege that he is the actual bona fide owner thereof, and set forth how and when he acquired title; but in such suit there shall be allowed all just set-offs, discounts and defenses, not only against the plaintiff, but also against the assignor or assignors, before notice of such assignment shall be given to the defendant."

Whether such amended declaration set forth a new, a different, cause of action, so that, in applying the statute of limitations, the date of the amendment rather than the date of the commencement of the action governs, is the question before us. Relying on the decision in Allis-Chalmers Mfg. Co. v. Chicago, 297 Ill. 444, 130 N. E. 736, the majority opinion holds that this court has no alternative but to affirm the decision of the District Court.

Whether the assignment of the cause of action must be pleaded, is not the determinative question. For the purpose of the argument, the decision of Allis-Chalmers Mfg. Co. v. Chicago, supra, may be accepted as conclusive on the necessity of alleging the assignment. Our question is, however, whether the amended declaration changes the cause of action from that stated, or attempted to be stated, before the amendment. Is such question a substantive question of law, or a matter of pleading and practice? I shall consider the question on both hypotheses.

Upon this question, the effect of amended pleadings, two decisions of the Supreme Court are most instructive. In N. Y. Cent. R. R. v. Kinney, 260 U. S. 340, 43 S. Ct. 122, 67 L. Ed. 294, the court was dealing with the effect of an amendment which inserted allegations that the carrier, at the time of the accident, was engaged in interstate commerce. It said: "The amendment 'merely expanded or amplified what was alleged in support of the cause of action already asserted * * * and was not affected by the intervening lapse of time.' Seaboard Air Line Ry. v. Renn, 241 U. S. 290, 293 [36 S. Ct. 567, 568, 60 L. Ed. 1006]. 'The facts constituting the tort were the same, whichever law gave them that effect.' Seaboard Air Line Ry. v. Koennecke, 239 U. S. 352, 354 [36 S. Ct. 126, 127, 60 L. Ed. 324]. See, also, St. Louis, San Francisco & Texas Ry. Co. v. Smith, 243 U. S. 630 [37 S. Ct. 477, 61 L. Ed. 938]. Of course an argument can be made on the other side, but, when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." The court held that no new cause of action was stated in the amended declaration, so as to permit of the defense of the statute of limitations.

In Missouri, K. & T. Ry. v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134, the court went farther than is necessary for us to go in the case at bar. After holding that a complaint brought against a railroad for damages resulting in the death of an employe while engaged in interstate commerce stated no cause of action in favor of such plaintiff, leave was granted in the lower court to amend the complaint so as to substitute the widow of the deceased for the administrator of said deceased. The court, considering the effect of such an amendment, said: "It is true that under the federal statute the plaintiff could not, although sole beneficiary, maintain the action except as personal representative. So it was held in American Railroad Co. v. Birch, 224 U. S. 547 [32 S. Ct. 603, 56 L. Ed. 879]. But in that case there was no offer to amend by joining or substituting the personal representative, and this court, while reversing the judgment, did so without prejudice to such rights as the personal representatives might have. The decision left untouched the question of the propriety of such an amendment as was applied for and allowed in the case before us; an amendment that, without in any way modifying or enlarging the facts upon which the action was based, in effect

merely indicated the capacity in which the plaintiff was to prosecute the action. The amendment was clearly within section 954, Rev. Stat. [Comp. St. § 1591]. Nor do we think it was equivalent to the commencement of a new action, so as to render it subject to the two years' limitation prescribed by section 6 of the Employers' Liability Act [Comp. St. § 8662]. The change was in form rather than in substance. Stewart v. Baltimore & Ohio Railroad Co., 168 U. S. 445 [18 S. Ct. 105, 42 L. Ed. 537]. It introduced no new or different cause of action, nor did it set up any different state of facts as the ground of action, and therefore it related back to the beginning of the suit. Texas & Pacific Ry. Co. v. Cox, 145 U. S. 593, 603 [12 S. Ct. 905, 36 L. Ed. 829]; Atlantic & Pacific R. Co. v. Laird, 164 U. S. 393, 395 [17 S. Ct. 120, 41 L. Ed. 485]."

Applying the language of this decision to the present case, we find that the amendment in no way modified or enlarged the facts upon which the cause of action was based, but merely "indicated the capacity" in which plaintiff was to prosecute the action. Before this amendment to the Illinois statutes the holder of the contract sued in the name of the original party thereto, but for his own benefit. Under the amendment, he sued in his own name and for his own benefit.

The decision of the court in Quaker City Cab Co. v. Fixter (C. C. A.) 4 F.(2d) 327, is equally instructive. Had the action there been brought in the Pennsylvania state court, the amendment would, under the decisions of the state court, have been held to state a new cause of action, so that the statute of limitations would have applied as of the date of the amendment. But the court, in harmony with other federal court holdings, decided the question for itself and held otherwise.

If the statute is one dealing with a question of pleading and practice, the conformity statute (section 914, R. S. [section 1537, U. S. Compiled Statutes]), which requires adherence to state court holdings only "as near as may be," becomes important. In other words, if it be conceded for the purpose of the argument that the conformity statute applies to the question of what constitutes a new cause of action, still there is a limitation in the conformity statute upon the extent of its application.

Under this reservation ("as near as may be") federal courts are at liberty to depart from the rules of pleading and practice prevailing in the state court, when in their judgment such rules would tend to defeat the ends of justice. Indianapolis, etc., R. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898; Shepard v. Adams, 168 U. S. 618, 18 S. Ct. 214, 42 L. Ed. 602; Phelps v. Oaks, 117 U. S. 236, 6 S. Ct. 714, 29 L. Ed. 888; Mexican Central Ry. Co. v. Pinkney, 149 U. S. 194, 13 S. Ct. 859, 37 L. Ed. 699; Lange v. Union Pac. Ry. Co., 126 F. 338, 340, 62 C. C. A. 48; Williamson v. Liverpool & London & Globe Ins. Co., 141 F. 54, 72 C. C. A. 542, 5 Ann. Cas. 402; Southern Oil Corp. v. Waggoner (C. C. A.) 276 F. 487, 490; Salisbury v. Bennett (C. C.) 72 F. 743.

Why should this court adopt the holding of the Allis-Chalmers Case? It is doubtful if the holding would have been adopted by any other state in the Union. Practically all of the states, certainly 90 per cent. of them, have either adopted the Code or especially provided that actions shall be brought in the name of the real party in interest. That the present decision leads to injustice cannot be doubted. In view of such injustice, we should not follow the decision of a state court whose precedents are those of the Elizabethan era, but should depart therefrom in order to avoid a "defeat of justice." Such slavish devotion to the rules of the common law, so long abandoned in the land of its origin, should not be sanctioned in the federal courts, when it would not only be unjust to do so, but would lead to hopeless confusion.

There is another reason why the Conformity Act should not bind us in this case. This statute applies only when Congress has not legislated upon the particular subject. Where Congress has legislated, the conformity statute is not applicable.

This statute applies only in the absence of direct legislation upon the subject by Congress. Keary v. Farmers' and Merchants' Bank, 41 U. S. (16 Pet.) 89, 10 L. Ed. 897; Franzen v. M. & St. P. Ry. Co. (C. C. A.) 278 F. 370; Petty & Co. v. Dock Contractor Co. (C. C. A.) 283 F. 341; Southern Oil Co. v. Wagoner (C. C. A.) 276 F. 487.

Section 954, R. S. (section 1591, U. S. Compiled Statutes), deals with the subject of amendments. Among other things, it is provided: "And such court * * * may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

While such statute deals merely with the authorization of amendments, it irresistibly follows that if the federal statute governs as to the allowance of amendments, the *effect* of such amendment must likewise be governed by the federal rather than the state law. In

other words, the decision of the Illinois court is controlling, at most, only in so far as we are required under the Conformity Act to accept it. If upon the subject there dealt with, namely, amendments, the conformity statute is not applicable, the decision of the state court governing the effect of amendments is not controlling. The weight of such state court decision is the same as the decision of any state court for which we entertain great respect; but when it is contrary to the holdings and dicta of federal courts, or contrary to the great weight of authority prevailing throughout the United States, it should be repudiated.

It seems to me that reason, as well as the precedents above mentioned, requires us to hold that no new cause of action was stated by the insertion of the amendment here under consideration. Pleadings are but means whereby the ends of justice may be advanced and made more certain. They are not weapons whereby experienced and learned counsel may defeat an opponent, to the prejudice of the litigants. At no time was there the least confusion or misunderstanding as to the nature of this controversy. Plaintiff charged the defendant with having made a written contract for the sale of oil, and also charged that it breached the contract to the damage of the plaintiff. The contract itself was set forth in one count of the declaration in hæc verba. Doubtless the oversight which occasioned the plaintiff's failure to connect it with the contract, except through the addendum clause, was occasioned by the fact that plaintiff bore the same name as the copartnership, and was in fact a mere continuation of the copartnership.

My associates have insisted that this is not a question of practice, but rather a matter of local statute, the construction of which by the Supreme Court of Illinois is decisive. Approaching the question on this hypothesis, let us inquire into the extent to which such state decisions are controlling. Decisions without end may be cited wherein various courts in individual cases have apparently accepted the construction placed upon state statutes by the state Supreme Court. In doing so, at various times, careless language has appeared, which, taken literally, may have extended the rule beyond its legitimate limits. That the rule, however, has limitations, and these limitations are clearly marked, cannot be doubted. It has been so announced by this court in a rather recent case. Quarles v. City of Appleton (C. C. A.) 299 F. 508. Two of the judges now sitting helped to constitute the court in that case.

An extensive discussion of the rule may be found in Swift v. Tyson, 41 U. S. (16 Pet.) 1, 18, 10 L. Ed. 865. I quote therefrom: "In the ordinary use of language, it will hardly be contended that the decisions of courts constitute laws. They are, at most, only evidence of what the laws are, and are not of themselves laws. They are often re-examined, reversed, and qualified by the courts themselves, whenever they are found to be either defective, or ill-founded, or otherwise incorrect. The laws of a state are more usually understood to mean the rules and enactments promulgated by the legislative authority thereof, or long-established local customs having the force of laws. In all the various cases which have hitherto come before us for decision, this court have uniformly supposed that the true interpretation of the thirty-fourth section limited its application to state laws, strictly local; that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intraterritorial in their nature and character. It never has been supposed by us that the section did apply, or was designed to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation, as, for example, to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law, where the state tribunals are called upon to perform the like functions as ourselves; that is, to ascertain, upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case. And we have not now the slightest difficulty in holding that this section, upon its true intendment and construction, is strictly limited to local statutes and local usages of the character before stated, and does not extend to contracts and other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence."

This decision has been severely criticized, particularly in the minority opinion in Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228. It was upheld, however, and has subsequently been accepted without serious question. In Baltimore & O. Railroad Co. v. Baugh, 149 U. S. 368, 13 S.

Ct. 914, 37 L. Ed. 772, the court refers to this decision, and notes that the statute thus construed has never been amended: "Notwithstanding the interpretation place by this decision upon the thirty-fourth section of the Judiciary Act of 1789 [Comp. St. § 1538], Congress has never amended that section; so it must be taken as clear that the construction thus placed is the true construction, and acceptable to the legislative as well as to the judicial branch of the government."

In Edward Hines' Trustees v. Martin, 268 U. S. 458, 463, 45 S. Ct. 543, 69 L. Ed. 1050, this decision is again referred to approvingly, and also in Pana v. Bowler, 107 U. S. 529, 2 S. Ct. 704, 27 L. Ed. 424, we find another statement of the rule with its limitations: "Where the construction of a state Constitution or law has become settled by the decision of the state courts, the courts of the United States will, as a general rule, accept it as evidence of what the local law is. * * * But *we are not bound to accept the inference drawn by the Supreme Court of Illinois,* that in consequence of such irregularity in the election the bonds issued in pursuance of it by the officers of the township, which recite on their face that the election was held in accordance with the statute, are void in the hands of bona fide holders. This latter proposition is one which falls among the general principles and doctrines of commercial jurisprudence, upon which it is our duty to form an independent judgment, and in respect of which we are under no obligation to follow implicitly the conclusions of any other court, however learned or able it may be."

To like effect see Olcott v. The Supervisors, 83 U. S. (16 Wall.) 678, 21 L. Ed. 382; Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359. Numerous other cases are herewith collected. Town of Venice v. Murdock, 92 U. S. 494, 23 L. Ed. 583; Presidio County v. Noel-Young Bond Co., 212 U. S. 58, 29 S. Ct. 237, 53 L. Ed. 402; Clark v. Bever, 139 U. S. 96, 11 S. Ct. 468, 35 L. Ed. 88; Casserleigh v. Wood, 119 F. 308, 56 C. C. A. 212; City of Ottumwa v. City Water Supply Co., 119 F. 315, 56 C. C. A. 219, 59 L. R. A. 604; Id. (C. C.) 120 F. 309; Columbia Ave. Sav. Fund v. City of Dawson (C. C.) 130 F. 152; City of Mankato v. Barber Asphalt Paving Co., 142 F. 329, 73 C. C. A. 439; Phœnix Bridge Co. v. Castleberry, 131 F. 175, 65 C. C. A. 481; Independent School Dist. v. Rew, 111 F. 1, 49 C. C. A. 198, 55 L. R. A. 364; Gilbert v. American Surety Co., 121 F. 499, 57 C. C. A. 619, 61 L. R. A. 253; Scott v. McNeal, 154 U. S. 34, 14 S. Ct. 1108, 38 L. Ed. 896; Township of Pine Grove v.

Talcott, 86 U. S. (19 Wall.) 666, 22 L. Ed. 227. They are all of them in harmony with the Tyson Case, and the Case of Pana v. Bowler.

Applying the decision of Pana v. Bowler to the present case, it seems to the writer that the majority opinion is giving effect, not only to the state court's construction of the statute, but to the inference which the state court makes from that construction, which inferences we are all agreed are illogical and unsound. In other words, it might well be held under this Illinois statute that the pleader should set forth how and when he acquired his rights under the contract. If he did not do so, the declaration would be bad. That situation would be identical with the one that confronted the Supreme Court in American R. Co. v. Birch, 224 U. S. 547, 32 S. Ct. 603, 56 L. Ed. 879, where it held that no cause of action was stated under the congressional act dealing with a carrier's liability to its employés. However, the question of the *amendment* of such declaration and whether the *amended declaration sets forth a new cause of action,* is not involved in the construction of the statute. Applying Pana v. Bowler, supra, to this situation, we are not required to follow the state court decision because it expresses merely inferences which we are able to deduce for ourselves.

Rather is our case similar to Missouri, K. & T. Ry. v. Wulf, supra, where it was held the declaration was insufficient as it was originally drawn, but was sufficient when amended, and the real question was the effect of the amendment. The amended declaration did not state a new cause of action, so it was held. The decision in Kuhn v. Fairmont Coal Co., supra, is especially worthy of consideration, in view of the facts in this case. This action was brought before the Allis-Chalmers decision was announced by the Illinois Supreme Court.

I have not gone into the question of what constitutes a new cause of action, nor have my associates, because I have assumed that, if the question was an open one, all would agree that the introduction of this amendment did not state a new, a different, cause of action. 17 R. C. L. 814, 815; Boudreaux v. Tucson Gas, E. L. & P. Co., 13 Ariz. 361, 114 P. 547, 33 L. R. A. (N. S.) 196, and note; Leatherman v. Times Co., 88 Ky. 291, 11 S. W. 12, 3 L. R. A. (N. S.) 324, 21 Am. St. Rep. 342; 8 A. L. R. 1405, note. At least, it would not constitute a new cause of action under the great weight of authority, and surely not in the federal courts.

Undoubtedly, section 914, R. S., was en-

acted to harmonize the holdings in state and federal courts when dealing with the same subject. And there is a lack of harmony when the federal courts of Illinois hold that a certain amendment to a pleading does not constitute a new cause of action and the state court decisions of Illinois hold that it does. The federal court, to harmonize its decisions with the Illinois court, would, however, be getting out of harmony with the other federal courts and the Supreme Court of the United States. This Circuit Court of Appeals would be in the anomalous situation were it to hold that such an amended pleading would not state a new cause of action in Indiana and Wisconsin, but would in Illinois. Greater confusion could hardly be conceived. And worse than such confusion is a decision, not only contrary to the weight of authority, but one for which the court must apologize.

It is hardly necessary to add that I think the judgment should be reversed.