**HALL et al. v. TURNER et al.**
**and**
**JUSTUS et al. v. TOWN OF SHIDLER.**

Nos. 15809 and 16003, Consolidated. Opinion Filed Nov. 9, 1926.

Rehearing Denied June 28, 1927.

(Syllabus.)

**Municipal Corporations—Invalidity of Bond Election in Incorporated Town.**

Where an incorporated town, in accordance with law, is divided into three wards, and only one voting precinct is established for all the voters of the town, and all voters voting in a bond election, held in said town, cast their vote in the one precinct, which said precinct extends beyond ward lines in violation of section 6134, Compiled Oklahoma Statutes, 1921, and a sufficient number of votes are cast by electors, who reside outside of the ward in which the one precinct voting place is located to change the result of the election, such election is void.

Error from District Court, Osage County: Jesse J. Worten, Judge.

Action by W. E. Hall et al., resident taxpayers, in No. 15809, against Sam Turner, trustee of the Town of Shidler, et al., for injunction. Judgment for defendants, and plaintiffs appeal. Reversed. No. 16003, action by Town of Shidler against L. A. Justus, Jr., chairman of County Excise Board, et al., in mandamus. Judgment for plaintiff, and defendants appeal. Reversed.

Holcombe & Lohman, for plaintiffs in error.

J. L. Jackson, J. O. Koch, and George P. Glaze, for defendants in error.

RILEY, J. By the first action, No. 15809, plaintiffs in error, as plaintiffs below, sought an injunction against the defendants in error, defendants below, to prevent them from executing, issuing, and selling water bonds of the city of Shidler, in the sum of $125,000. By the second action, No. 16003, the defendants in error, as plaintiffs, sought a writ of mandamus to compel the plaintiffs in error, as defendants below, in their official capacity as the excise board of Osage county, to vacate their order, which struck from the estimate of the town of Shidler, for the year 1924, the items and amount required to create a sinking fund to retire said bonds; they sought to reinstate such items on such estimate and to levy an adequate tax to create a sinking fund for said purpose.

In the first action a judgment was rendered dissolving a temporary injunction theretofore issued and denying a permanent injunction and allowing the judgment to be superseded; in the latter action the writ of mandamus was granted and supersedeas allowed. The actions, having been consolidated, will be considered together.

The petition in the first action alleges that Shidler is an incorporated town and "is divided into three wards, numbered 1, 2, and 3, and each of said wards comprises a voting precinct; that no election was held in wards 2 and 3, but all the persons voting at said election voted at the city hall in ward 1, and more than 150 persons who voted at said precinct were not residents of said ward and were not entitled to vote there." It appears that 184 votes were cast in the election, 107 being for the bonds and 77 against them. The defendants below, by answer, admitted the town of Shidler to be incorporated. They admitted their official character, and otherwise denied generally. The plaintiffs proved the election was held only in one ward and that the town was divided into three wards. Plaintiffs did not prove that there had been created or designated voting precincts in wards 2 and 3, but to the contrary, a witness, Randall, county registrar of Osage county, testified for plaintiffs that he delivered registration books to the registrar at Shidler, a Mr. Morrison, thus indicating

that there was but one registrar for the town, and consequently but one voting precinct therein, since under section 6251, Compiled Oklahoma Statutes, 1921, it is the duty of the county registrar to appoint a precinct registrar in each precinct in the county. We conclude then that the town of Shidler consisted of three wards; that at the time of the election there had been designated but one voting precinct therein. Was this condition fatal to the validity of the election held?

Section 6134, Compiled Oklahoma Statutes, 1921, is, in part, as follows:

"* * * All the territory included in a voting precinct shall be within a ward or township, while the territory of a voting precinct shall not extend beyond the boundary lines of a ward or municipal township, a ward or municipal township may contain as many precincts as the county board may deem necessary. * * *"

If this section applies, then the act of designating or extending a precinct so as include three wards is void. And, on the other hand the growth and incorporation of the town consisting of three wards within a theretofore existing precinct superseded the precinct as created in so far as the territory of the designated precinct extended beyond the limits of a ward. Under such circumstances, before a legal vote could be cast, at least in the extended territory, in a ward other than that where the voting place was, it would be necessary to have created voting precincts in the other wards. Section 6134, supra, contemplates such action, for it concludes with the provision: "If such board shall fail to act as herein directed, any qualified elector of the county may apply for a writ of mandamus to compel the performance of this duty."

Section 6252, Compiled Oklahoma Statutes, 1921, requires each qualified voter to register in the election precinct of which he is a resident. Then if the law restricts a precinct to a ward, how can it be said that citizens residing within separate and distinct wards are legally registered and entitled to vote within the same precinct?

In Goree et al. v. Cahill et al., 35 Okla. 42, 128 Pac. 124, it is held that:

"The requirements of the law relative to the place of holding an election are generally held mandatory, and an election conducted at any other than the designated place is void."

In Munger et al. v. Town of Watonga et al., 106 Okla. 78, 233 Pac. 211, it is said:

"Not only is every one presumed to know the law, but we think that the voters of this state generally understand that they are entitled to register only in the precinct of their residence, and are entitle to vote only in the precinct where registered. Can the presumption be indulged in such case that all the persons qualified to vote at the election, living in the town of Watonga, not residents of precinct No. 26, were willing to go to the polls and vote in violation of the law? We think no such presumption can be indulged."

It is contended that section 6134, supra, is not the law, but that the same was superseded by section 6298, Compiled Oklahoma Statutes, 1921, enacted by the Legislature of 1913, Session Laws 1913, p. 323, thus repealing by implication the former statute, with the result that ward lines provided for in the former section 6134, supra (Revised Laws, 3067, Session Laws 1907-08, p. 321), were entirely obliterated.

Becknell v. State, 68 Okla. 264, 172 Pac. 1094, is cited in support of this contention, wherein this court considered and ordered the creation of new precincts affecting the incorporated towns of Boley and Paden. It is argued that only numerical size of precincts governs in the creation of new ones, and that the existence of ward lines is no longer a restriction. This argument is based upon the premise that the judgment in that case was based upon numerical size of existing precincts only. This argument is not convincing for in that case both the statute of 1907-08 (section 6134, supra) and the law of 1913 (section 6298, supra) formed the basis of the opinion. These sections were considered in pari materia and a fortiori, and the restrictions contained in both sections relative to precincts crossing boundary lines of congressional, legislative, or commissioners' districts did not enter into the decision, for the simple reason that these restrictions and provisions relative to boundary lines of wards, township, legislative, congressional and commissioners' districts were not considered in the case. The election board was directed to create new precincts, the boundary lines of new precincts to be determined by the board and not the lower court. These directions were certainly right under either or both sections heretofore mentioned, for (1) it would be presumed that the board would follow the law, and (2) the board possessed certain discretion as to how many precincts would be necessary "within wards" and where precinct boundary lines should be placed.

The Act of 1913, section 6298, supra, made provision for what is commonly known as "outlying districts" to be attached to incorporated towns or cities for voting pur-

poses by the clause "that the territory of voting precincts may extend beyond the boundary lines of incorporated towns or cities if the county election board deems it advisable," thus voters residing without the corporate limits of cities or towns might, by action of the county election board, be included within a precinct of such city or town, and would thereafter as a matter of convenience cast their vote within such precinct and within the town or city. This act certainly permitted precincts in such particular instances and for such purposes to be extended beyond ward lines, for the wards would be restricted to, and ward lines would indicate, corporate limits. However, an elector whose residence was without the corporate limits and who was by said act so permitted to register within a precinct extending beyond the lines of the corporate limits would not be given a right to vote in matters pertaining solely to city affairs such as the issuance of bonds, or the election of officials of the city or town, nor would this Act of 1913 permit a precinct within an incorporated town or city to extend beyond ward lines within such city and thus obliterate ward lines. The Act of 1913, as applied, in giving extraterritorial effect to precincts, is wholly one of convenience. It does not add voting qualifications to one not theretofore possessed of them, and it is not applicable and does not govern so as to supersede the former act and permit precincts to extend beyond ward lines within such corporate limits.

Therefore, we conclude that the election held was void. The judgment in the former case should be and it is hereby reversed, and the trial court is instructed to enter an order enjoining the defendants in error from selling and disposing of said bonds, and in the latter case the writ of mandamus is denied, and the action of the defendants in error against the plaintiffs in error is directed to be dismissed.

NICHOLSON, C. J., BRANSON, V. C. J., and MASON, LESTER, PHELPS, HUNT and CLARK, JJ., concur.

Note—See 28 Cyc. p. 1591.