## CITY OF SHIDLER v. H. C. SPEER & SONS CO. et al.

### No. 703.

Circuit Court of Appeals, Tenth Circuit.
Dec. 21, 1932.

M. L. Holcombe, of Pawhuska, Okl. (Clarence Lohman, of Pawhuska, Okl., and W. R. Bleakmore and John Barry, both of Oklahoma City, Okl., on the brief), for appellant.

Streeter B. Flynn, of Oklahoma City, Okl. (R. M. Rainey and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl., and L. E. Mifflin, Co. Atty., of Idabel, Okl., on the brief), for appellees.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

At an election called for that purpose, the property owners of the City of Shidler voted to issue its negotiable bonds for the construction of municipal waterworks. The bonds were issued and sold to innocent purchasers for value, and the proceeds used for the construction of the waterworks, which the city now enjoys. The first interest coupons were paid, but the city refused payment of subsequent interest coupons, and of the bonds maturing in 1927.

The plaintiff, a nonresident of Oklahoma and the owner of $5,000 of these bonds, brings this suit in equity. The issuance of the bonds, their purchase by the plaintiff in reliance upon the recitals therein and the certificate of the Attorney General appended thereto, are alleged. The bill also alleges that the city has collected taxes for the purpose of paying said bonds, which it is threatening to divert to other purposes, and has otherwise repudiated the obligations thereof; and that the County Excise Board has refused to levy the taxes necessary to pay them. The prayer is that the defendants be enjoined from diverting taxes collected for the purpose of paying said bonds, and that an accounting of such moneys be had; that such funds be applied to the payment of the bonds, and if they be insufficient, that judgment be rendered against the city for the balance due; that the County Excise Board be required to levy such taxes as are necessary to retire the bonds as they mature. The holders of the balance of the issue, two of them being residents of Oklahoma, intervened and prayed for the same relief. The answer denies that the bonds are valid obligations of the city because the voters cast their ballots at one polling place instead of three, and because the election was held to be invalid by a decision of the Supreme Court of Oklahoma rendered more than two years after the bonds were issued and sold; it denies that plaintiff and interveners acquired the bonds in good faith.

There is little dispute in the facts. The parties agreed that all of the interveners, except Honnold, acquired their bonds before maturity, for value, and in good faith, without actual knowledge of any defect therein or any pending litigation, and in reliance upon the recitals contained in the bond. Evidence was taken as to the good faith of the plaintiff and Honnold, from which the trial court found, upon ample evidence, that they

stood in the same stead. The trial court made findings of fact and entered a final decree (1) enjoining all of the defendants from appropriating any of the moneys in the sinking fund created for the purpose of paying such bonds; (2) directing the City Treasurer to pay into the registry of the court the moneys in this sinking fund; (3) rendering judgments against the city for the amounts due and unpaid upon the bonds; (4) directing the County Excise Board to make sufficient tax levies to pay the judgments so rendered, and the interest and principal of the bonds as they mature; (5) directing the City Treasurer to transmit to the fiscal agency of the state the moneys collected under the levies to be made by the County Excise Board; (6) disbursing the moneys paid into the registry of the court to those entitled, the amounts so disbursed to be credited upon the judgments against the city; (7) reserving jurisdiction at the foot of the decree, to make such further orders as might be necessary in the premises.

From this decree, an appeal was prosecuted by the City of Shidler alone. Appellees move to dismiss on the ground that the decree is joint, and there were no proceedings in summons and severance. The point, if well taken, is jurisdictional. Newton v. Consolidated Gas Company, 264 U. S. 571, 44 S. Ct. 401, 68 L. Ed. 855; Id., 265 U. S. 78, 82, 44 S. Ct. 481, 68 L. Ed. 909; Garcia v. Vela, 216 U. S. 598, 30 S. Ct. 439, 54 L. Ed. 632; Hardee v. Wilson, 146 U. S. 179, 13 S. Ct. 39, 36 L. Ed. 933. The rule is only applicable to joint decrees, Osage Oil & Refining Co. v. Mulber Oil Co. (C. C. A. 10) 38 F.(2d) 396; whether the decree is joint is to be determined by the face of the decree. Hartford Accident & Ind. Co. v. Bunn, 285 U. S. 169, 52 S. Ct. 354, 76 L. Ed. 685. It is argued that the part of the decree which renders judgment against the city is separable from the parts directed against the City Treasurer and the County Excise Board, who have not appealed. If that is so, then a final decree stands which commands the County Excise Board to levy the necessary taxes to pay the bonds, and commands the City Treasurer to pay the moneys so raised to the plaintiff and the interveners. That is the substance of the relief sought; whether the judgment is valid is pretty close to a moot question. However, the decree is open to the interpretation that the relief granted against the city and county officers was intended to be ancillary to and dependent upon the judgment rendered against the city. Cf. Reed v.

Allen, 286 U. S. 191, 52 S. Ct. 532, 76 L. Ed. 1054. Because the decree is open to that construction, and because a consideration of the case upon the merits arrives at the same result, we pass on to such consideration.

Appellant challenges the jurisdiction of the trial court because two residents of Oklahoma were permitted to intervene. The objection is not well taken. Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673; Boynton v. Moffat Tunnel Improvement Dist. (C. C. A. 10) 57 F. (2d) 772, 783, certiorari denied, 53 S. Ct. 20, 77 L. Ed. ——.

Section 27, article 10 of the Oklahoma Constitution provides:

"Any incorporated city or town in this State may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: Provided, That any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

This is a self-executing grant of power. Dunagan v. Town of Red Rock, 58 Okl. 218, 158 P. 1170; State v. Short, 113 Okl. 187, 188, 240 P. 700; St. Louis-San Francisco R. Co. v. Andrews, 137 Okl. 222, 226, 278 P. 617. An ordinance was passed calling an election for the purpose of submitting to the qualified electors the question of whether the indebtedness, represented by these bonds, should be incurred for the purpose of providing funds with which to construct a waterworks system. The election proclamation, duly published, provided that the polling place should be at the city hall. There were three wards in the city. The bonds were carried by a substantial majority, the votes properly canvassed, and a bond ordinance passed. The bonds, dated January 15, 1924, are negotiable in form, and recite "that all acts, conditions and things required to be done, precedent to and in the issuance of this bond, have been properly done, happened and been performed in regular and due form and time as required by law."

The bonds were registered in the office of the Treasurer on February 22, 1924. On March 3, 1924, the Attorney General, Ex-Officio Bond Commissioner of the State of Oklahoma, appended to the bonds the following certificate:

"I HEREBY CERTIFY that I have examined a certified copy of the record of proceedings taken preliminary to and in the issuance of the within bond; that such proceedings and such bond show lawful authority for the issue and are in accordance with the forms and methods of procedure prescribed and provided by me for the issuance of bonds of like kind; and that said bond is a valid and binding obligation according to its tenor and terms, and, under the provisions of Article VI of Ch. 25, Compiled Statutes of Oklahoma 1921 (Sections 4283-4285), requiring the certificate of the bond commissioner of the State of Oklahoma thereon is incontestable in any court in the State of Oklahoma unless suit thereon shall be brought in a court having jurisdiction of the same within thirty days from the date of this approval of said bond appearing in the caption hereto."

On September 11, 1924, a contract was entered into for the construction of the waterworks, and the bonds were delivered to the contractor in payment therefor. The plaintiff and interveners thereafter acquired the bonds for value, without notice of any infirmity therein, or of any litigation challenging their validity, and in reliance upon the recitals in the bond and the certificate of the Attorney General. This finding of good faith, made by the trial court, is challenged as to the plaintiff and one of the interveners. The record amply supports the trial court's findings. The intervener Honnold was employed by the city to prepare the proceedings for the conduct of the election, and in 1926 contributed to the expense of counsel in an effort to procure a rehearing in the Supreme Court of Oklahoma of the case hereafter referred to. There is no evidence that Honnold, at the time he acquired his bonds, had any knowledge of the pending litigation, or of any infirmity in the bonds. On the contrary, there is evidence that he was advised by the clerk of the court that no litigation was pending. He also had the certificates of the city officers that no litigation was pending or threatened. This is persuasive evidence in

support of the trial court's finding of good faith.

On February 9, 1924, a taxpayer's suit was brought in the state court to enjoin the officers of the city from executing or selling the bonds. A temporary injunction was issued, which was, after a trial on the merits, dissolved on April 2, 1924. An appeal was prosecuted to the Supreme Court of Oklahoma, and that court, on November 14, 1926, reversed the lower court, holding that the election was illegal because polling places were not provided in each of the wards of the town. Hall v. Turner, 125 Okl. 248, 257 P. 328.

The contention of the appellant that these bonds are invalid because of defects in the preliminary proceedings is contrary to principles of law which have long been settled, and upon the faith of which a market for municipal obligations has been secured. The power of the city to issue the bonds in question, upon a vote of the taxpayers, is not questioned. It is the duty of the city officers, before issuing the bonds, to determine whether the preliminary proceedings were regular. The statutes of Oklahoma provide that the Attorney General shall examine into and pass upon municipal bonds and certify to their validity, and that no bonds shall be valid without such certificate. C. O. S. 1921, §§ 4283–4285.

The bonds contained a recital that all conditions precedent to their issuance had been properly performed; the Attorney General appended his certificate to the same effect; the parties stipulated, and the trial court found, that these bonds were acquired in reliance upon such recital and certificate, and without notice of anything to the contrary. The language of Mr. Justice Brewer, in Provident Life & Trust Co. v. Mercer County, 170 U. S. 593, 601, 18 S. Ct. 788, 791, 42 L. Ed. 1156, is apposite:

"By a long series of decisions such recitals are held conclusive in favor of a bona fide holder of bonds that precedent conditions prescribed by statute and subject to the determination of those county officers have been fully complied with. For instance, whether an election has been held, whether at such an election a majority voted in favor of the issue of bonds, whether the terms of the subscription have been complied with, and matters of a kindred nature, which either expressly or by necessary implication are to be determined in the first instance by the officers of the county, will, in favor of a bona fide holder, be conclusively presumed to have been fully performed, provided the bonds contain recitals similar to these in the bonds before us. See, among other cases, Coloma v. Eaves, 92 U. S. 484 [23 L. Ed. 579]; Warren County v. Marcy, 97 U. S. 96 [24 L. Ed. 977]; Buchanan v. Litchfield, 102 U. S. 278 [26 L. Ed. 138]; Northern Bank v. Porter Township, 110 U. S. 608, 4 S. Ct. 254 [28 L. Ed. 258]; Bernards Township v. Morrison, 133 U. S. 523, 10 S. Ct. 333 [33 L. Ed. 726]; Citizens' Saving & Loan Ass'n v. Perry County, 156 U. S. 692, 15 S. Ct. 547 [39 L. Ed. 585]; Andes v. Ely, 158 U. S. 312, 15 S. Ct. 954 [39 L. Ed. 996]."

This court recently announced the same doctrine. Board of Education v. James, 49 F.(2d) 91, 99. See, also, Presidio County v. Noel-Young Bond Co., 212 U. S. 58, 29 S. Ct. 237, 53 L. Ed. 402; Stanly County v. Coler, 190 U. S. 437, 23 S. Ct. 811, 47 L. Ed. 1126; Waite v. Santa Cruz, 184 U. S. 302, 22 S. Ct. 327, 46 L. Ed. 552; Evansville v. Dennett, 161 U. S. 434, 16 S. Ct. 613, 40 L. Ed. 760; Orleans v. Platt, 99 U. S. 677, 682, 25 L. Ed. 404; Shelton v. Gas Securities Co. (C. C. A. 8) 239 F. 653; Town of Aurora v. Gates (C. C. A. 8) 208 F. 101, L. R. A. 1915A, 910; Independent School District v. Rew (C. C. A. 8) 111 F. 1, 55 L. R. A. 364; South Sioux City v. Hanchett Bond Co. (C. C. A. 8) 19 F.(2d) 476. The cases cited by appellant have to do with statutes that impose conditions subsequent to the issuance of the bonds, conditions which manifestly could not be covered by certificates issued prior thereto; the defect in the proceedings relied upon in this case preceded the issuance of the bonds, and is covered by the certificates.

Moreover, it is stipulated that the city availed itself of the proceeds of these bonds, constructed a waterworks therewith, and is now enjoying the use thereof. There is an apposite rule of law to the effect that where a city has power to contract an obligation, but there is a defect in the manner of its exercise, the city is liable for the benefits received and retained; a defect in the evidence of an obligation does not discharge the obligation. This rule was concisely stated in South Sioux City v. Hanchett Bond Co. (C. C. A. 8) 19 F.(2d) 476, 478, in this language:

"Even should the city be successful in its attempt to repudiate the bonds in suit, it would not thereby benefit its condition, for in such event, not having paid the contractor for what it has received and is using, he or his assigns would be entitled to the money earned under the contract owed by the city on the paving contract."

Many controlling decisions of the Supreme Court of the United States are cited in support of the above statement. In addition thereto, see Incorporated Town of Gilman v. Fernald (C. C. A. 8) 141 F. 941; Board of Commissioners of Kearny County v. Irvine (C. C. A. 8) 126 F. 689; Geer v. School District No. 11 (C. C. A. 8) 111 F. 682.

■ The principal contention of appellant is not that these bonds are invalid, but that the Supreme Court of Oklahoma so determined in Hall v. Turner, supra. There are many answers to this contention. In the first place, the Supreme Court of Oklahoma did not pass upon the validity of these bonds. No question was presented to that court as to the power of the city to repudiate recitals as against those who acquired the bonds for value, in reliance upon the recitals. Again, that opinion was handed down long after these bonds were sold, and it is well settled that decisions of state courts, rendered after the bonds are sold, are not controlling upon the courts of the United States. In Knox County v. Ninth National Bank, 147 U. S. 91, 13 S. Ct. 267, 37 L. Ed. 93, an issue of bonds was sustained, notwithstanding the fact that the state Supreme Court had held that the election was invalid. See, also, Board of Education v. James (C. C. A. 10) 49 F.(2d) 91, 96; Powell v. City of Ada (C. C. A. 10) 61 F.(2d) 283.

■ Appellant contends that the decision of the state Supreme Court is binding as an adjudication upon Honnold and those claiming under him. Neither Honnold, nor any of the bondholders here involved, was a party to that suit. It appears that Honnold contributed to the expense of counsel in their efforts to secure a rehearing in the Oklahoma Supreme Court. This, however, is not sufficient to give him any control over the litigation, nor to bind him by the adjudication. Bigelow v. Old Dominion Copper M. & S. Co., 225 U. S. 111, 126, 32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875; Rumford Chem. Works v. Hygienic Chem. Co., 215 U. S. 156, 30 S. Ct. 45, 54 L. Ed. 137; City of Mankato v. Barber Asphalt Paving Co. (C. C. A. 8) 142 F. 329; Lane v. Welds (C. C. A. 6) 99 F. 286. Furthermore, Honnold's contribution to the expenses came long after he had acquired the bonds.

■ The further contention that the rule of lis pendens applies in Oklahoma to municipal securities is without substance. It is conceded, as indeed it must be, that the doctrine of lis pendens does not generally apply to ne-

gotiable securities. Presidio County v. Noel-Young Bond Co., 212 U. S. 58, 29 S. Ct. 237, 53 L. Ed. 402; Carroll County v. Smith, 111 U. S. 556, 562, 4 S. Ct. 539, 28 L. Ed. 517; Cass County v. Gillett, 100 U. S. 585, 593, 25 L. Ed. 585; Orleans v. Platt, 99 U. S. 677, 682, 25 L. Ed. 404; Warren County v. Marcy, 97 U. S. 96, 24 L. Ed. 977.

■ It is contended, however, that the Oklahoma statute which provides that municipal securities shall be incontestable unless suit thereon is brought within 30 days from the date of the approval of the Attorney General (C. O. S. 1921, § 4284) is a lis pendens statute, and that if a suit is brought within the 30 days provided for by the statute, purchasers of municipal securities are bound thereby. The statute does not say anything of the sort, and we have neither the power nor the inclination to incorporate such a section in the statute. There being no such statute, we are not confronted with the question of the constitutional power of the Legislature to adjudicate the validity of bonds without notice or a hearing to the holders thereof. This section has been repeatedly construed to be exactly what it is, a special statute of limitations designed to give stability and value to municipal securities, and to afford to the municipalities issuing them a market therefor. Board of Education of Town of Owasso v. Short, 89 Okl. 5, 213 P. 857; City of Chickasha v. O'Brien, 58 Okl. 46, 159 P. 282; Johnson v. Town Board of Trustees of Arnett, 139 Okl. 167, 281 P. 777; Murray v. McGehee, 121 Okl. 248, 249 P. 700; Board of Commissioners v. Bristow Battery Co. (D. C. Okl.) 28 F.(2d) 195, reversed on other grounds (C. C. A. 10) 37 F.(2d) 504. Furthermore, it conclusively appears that no action was brought within 30 days after the Attorney General's approval.

■ The action that was brought prior to the Attorney General's approval was a personal action to enjoin officers of the municipality from issuing the bonds in question. Before the bonds were issued, the injunction was dissolved, although the case was then on appeal. Whether the bonds were issued in violation of an injunction is not clear. But if so, the remedy is a proceeding in contempt for violation of the injunction, and not the confiscation of the property of those who bought in ignorance of the suit. The Supreme Court of the United States, in a long line of cases, has not deviated from the rule early established, that the title of a purchaser in good faith of negotiable securities is not voided by the fact that they were issued

during the pendency of an action to enjoin their issuance, or in violation of an injunctive order in such action. See, among others, Warren County v. Marcy, 97 U. S. 96, 24 L. Ed. 977; Orleans v. Platt, 99 U. S. 677, 683, 25 L. Ed. 404; Cass County v. Gillett, 100 U. S. 585, 593, 25 L. Ed. 585; Carroll County v. Smith, 111 U. S. 556, 4 S. Ct. 539, 28 L. Ed. 517; Tregea v. Modesto Irrigation District, 164 U. S. 179, 186, 17 S. Ct. 52, 41 L. Ed. 395; Presidio County v. Noel-Young Bond & Stock Co., 212 U. S. 58, 76, 29 S. Ct. 237, 53 L. Ed. 402.

Appellant urges that unless the bonds of innocent holders are thus sacrificed, the taxpayers are without a remedy. The conclusion does not follow. There is a presumption, unfortunately not always founded on fact, that officers of the law will recognize and obey the orders of courts of competent jurisdiction; in the great majority of cases, the injunctive remedy is adequate. If there is ground to believe that a restraining order will not be obeyed, the court has power to impound the securities during the litigation.

The decree of the trial court is affirmed.